**UNITED STATES v. MINKER et al.**

No. 18323.

District Court, D. Maryland.

May 24, 1937.

Bernard J. Flynn, U. S. Atty., and T. Barton Harrington, Asst. U. S. Atty., both of Baltimore, Md., for the United States.

Milton H. Talkin, Cornelius Mundy, Thomas E. Mason, Joseph L. Carter, and Robert B. Elliott, all of Baltimore, Md., and Henry B. Friedman, of Allentown, Pa., for defendants.

CHESNUT, District Judge.

The question of law presently presented in this case is whether certain internal revenue statutes affecting intoxicating liquor were in force between August 27, 1935, the effective date of the "Liquor Law Repeal and Enforcement Act" (49 Stat. 872), and June 26, 1936, the date of the "Liquor Tax Administration Act" (49 Stat. 1939).

The question arises in this way. The defendants in this case, sixteen in number, were indicted on five counts. The first count charges a conspiracy to violate sections 1162, 1184, 1322 and 1287 of title 26 of the United States Code 26 U.S.C.A. §§ 1162, 1184, 1322, and 1287. The period covered by the conspiracy as alleged in the indictment was from March 1, 1936 until the date of the indictment, October 29, 1936. The second, third, fourth and fifth counts charge the defendants with the consummated violations of sections 1162, 1184, 1322 and 1287 respectively, all on June 30, 1936. Of the sixteen defendants, two were returned non est; seven pleaded guilty and seven were tried. The trial resulted in verdicts of guilty against all seven on one or more counts of the indictment. Three of the latter seven have submitted to sentence without motion for new trial or in arrest of judgment; but of the remaining four defendants, Abe Minker and Solomon Levitas, have filed motions for a new trial and in arrest of judgment, and Isadore Malinow has filed a motion for a new trial. There was no demurrer to the indictment.

The question of law arises on the motion in arrest of judgment, which is based on the contention that the several specified sections of title 26 of the Code (26 U.S.C.A.) were not in force from March 1, 1936, the date of the alleged beginning of the conspiracy, to June 26, 1936. The testimony at the trial on behalf of the Government was to the effect that an unlawful and unregistered still as charged in the indictment, was in fact being operated from about June 15, 1936, to and including June 30, 1936, when it was discovered and raided by

federal agents. While the Government is not held strictly to the precise date of the conspiracy as alleged in the indictment (within the period of limitations of course), it is pointed out that much of the evidence tending to establish the conspiracy as to some of the defendants related to a period prior to June 26, 1936. Of the defendants who have moved for a new trial and in arrest of judgment, Isadore Malinow was convicted only on the first count charging conspiracy, while the other defendants who have so moved for a new trial and arrest of judgment were convicted on the first four counts of the indictment, all having been acquitted under instructions of the court on the fifth count.

The contention of the defendants that these sections of the internal revenue laws were not in force from August 27, 1935 to June 26, 1936, is based on section 1 of title 1 of the Liquor Law Repeal and Enforcement Act approved August 27, 1935, 49 Stat. 872 (United States Code 1934 edition, Supp. 1, title 27, p. 187, 27 U.S.C.A. ch. 2, note), which reads as follows:

"Section 1. Titles I and II of the National Prohibition Act, approved October 28, 1919 (41 Stat. 305), and all laws amendatory of, or supplementary to, the National Prohibition Act, are hereby repealed."

One of the laws amendatory of or supplementary to the National Prohibition Act said to be so repealed was the well known Willis-Campbell Act approved November 23, 1921, 42 Stat. 222, c. 134, § 5, which became codified in United States Code, title 27, § 3, 27 U.S.C.A. § 3.[1] It will be recalled that in United States v. Yuginovich, 256 U.S. 450, 41 S.Ct. 551, 65 L.Ed. 1043, the Supreme Court had held that certain sections of the internal revenue statutes relating to liquor had been impliedly repealed by the National Prohibition Act (October 28, 1919, c. 85, 41 Stat. 305, 27 U.S.C.A. § 1 et seq.) because the penalties in that Act were less severe than those in the internal reve-

nue statutes covering similar prohibited acts. The statutes so held repealed were R.S. §§ 3257, 3279, 3281, and 3282, which became respectively on codification in the United States Code, title 26 (1935 revised edition) sections 1155(f), 1182, 1184 and 1185 (26 U.S.C.A. §§ 1155(f), 1182, 1184, 1185). To meet the decision in this case Congress passed the Willis-Campbell Act of 1921 (42 Stat. 222) which the Supreme Court held in United States v. Stafoff, 260 U.S. 477, 43 S.Ct. 197, 67 L.Ed. 358, was effective to re-enact the sections of the internal revenue laws which had been impliedly repealed by the National Prohibition Act for the future but not effective to restore them retroactively. And in the last named case it was also held that the sections of the revised statutes numbered 3258 and 3242, which on codification became title 26 (revised edition) sections 1162 and 1397 (b), 26 U.S.C.A. §§ 1162, 1397(b), also had been impliedly repealed by the National Prohibition Act; but all of them were revived by the Willis-Campbell Act.

It will be noted that two of the internal revenue statutes specified in the indictment in the present case, sections 1162 and 1184 of title 26 (1935 ed.), 26 U.S.C.A. §§ 1162, 1184, are among the statutes which the Supreme Court held had been repealed by the National Prohibition Act but revived by the Willis-Campbell Act. And it is contended on behalf of the defendants that the other sections specified in the indictment, to wit, sections 1287 and 1322, which had been respectively R.S. § 3296 and 34 Stat. 217, § 2, had likewise been repealed by the National Prohibition Act and restored by the Willis-Campbell Act. As to section 1287, 26 U.S.C.A. (R.S. § 3296) it was so held in Reed v. Thurmond (C.C.A.4) 269 F. 252. See, also, Benton v. United States (C.C.A.4) 28 F.(2d) 695; Wainer v. United States, 299 U.S. 92, 57 S.Ct. 79, 81 L.Ed. 58; Benton v. United States (C.C.A.4) 80 F.(2d) 162.[2] It is thus said on behalf of

---

[1] Its text read as follows:

"3. Effect on existing legislation. All laws in regard to the manufacture and taxation of and traffic in intoxicating liquor, and all penalties for violations of such laws that were in force on October 28, 1919, shall be and continue in force as to both beverage and nonbeverage liquor, except such provisions of such laws as are directly in conflict with any provisions of this title; but if any act is a violation of any of such laws and also of this title, a conviction for such

act or offense under one shall be a bar to prosecution therefor under the other."

[2] As to section 1322, 26 U.S.C.A. (particularly in point under the evidence in the case) the proposition that it was impliedly repealed by the National Prohibition Act is at least doubtful. Bilodeau v. United States, 14 F.(2d) 582 (C.C.A. 9), certiorari denied 273 U.S. 737, 47 S. Ct. 245, 71 L.Ed. 866; Selzman v. United States, 268 U.S. 466, 45 S.Ct. 574, 69 L.Ed. 1054.

the defendants that the conspiracy count of the indictment is fatally defective, because it alleges that the conspiracy was to violate laws of the United States which in fact had no existence during the major part of the time that the alleged conspiracy was effective; it being contended that these specified sections of the internal revenue laws, having been repealed by the National Prohibition Act, were revived and re-enacted only by the Willis-Campbell Act which in turn was repealed by the Liquor Law Repeal and Enforcement Act, thus accomplishing finally the repeal of the specified sections of the internal revenue laws on which the indictment was based.

It is not questioned by the defendants that these sections of the internal revenue laws were at least again made effective by the Liquor Tax Administration Act of June 26, 1936 (49 Stat. 1939, 1963) which, by section 413 (26 U.S.C.A. § 1289a) provided:

"Section 413. All internal-revenue laws of the United States, in regard to the manufacture and taxation of, and traffic in, distilled spirits, wines, and malt liquors, and all penalties for violations of such laws, that were in force at the time the National Prohibition Act was enacted [on October 28, 1919], shall be and continue in force, except as they have been repealed or amended by Acts other than (1) Title II of the National Prohibition Act [Act of October 28, 1919, c. 85, 45 Stat. 308], as amended and supplemented, and (2) section 1 of the Liquor Law Repeal and Enforcement Act [Act of August 27, 1935, c. 740, 49 Stat. 872], and except as they may be modified by, or may be inconsistent with, this Act [the Act of June 26, 1936, c. 830, 49 Stat. 1939–1966]."

But it is argued that the language of the latter act, similar in phraseology to the Willis-Campbell Act, is at least an implied recognition by Congress that the internal revenue statutes which were held to have been repealed by the National Prohibition Act and restored by the Willis-Campbell Act, were again repealed by the Liquor Law Repeal and Enforcement Act, and only again restored by the Liquor Tax Administration Act of 1936; and were thus not in force from August 27, 1935, to June 26, 1936, in accordance with the principle announced in the Stafoff Case.

The contention does not lack plausibility, at least in its formal aspects. But the subject matter must be considered more than superficially. To determine the true intent of Congress with respect to the challenged internal revenue statutes, it is necessary to bear in mind the changing situation that Congress had before it with respect to (1) the taxation of and (2) the prohibition of liquor followed by (3) the repeal of prohibition. To ascertain this true intention resort must also be had in this case to the hearings before the Senate Committee and the House and Senate Reports relating to the Liquor Law Repeal and Enforcement Act of 1935, to ascertain whether it was really the intention of ' Congress by the latter Act to repeal the internal revenue statutes which were then in force and which are here questioned. These statutes were an integral and important part of internal revenue legislation affecting the taxation of liquor prior to National Prohibition. They were not expressly or directly repealed by the National Prohibition Act, but the Supreme Court held there was an implied repeal. Apparently this was the inadvertent result of legislation and not the result directly intended by Congress, as is evidenced by the prompt passage of the Willis-Campbell Act. It is not disputed that the latter Act certainly reinstated these statutes for the future and they continued to be operative throughout the period of National Prohibition and were not affected by the repeal of prohibition. United States v. Chambers, 291 U.S. 217, 223, 54 S.Ct. 434, 435, 78 L.Ed. 763, 89 A.L.R. 1510; Case v. Alderson, 76 F.(2d) 25 (C.C.A.4); Scott v. United States (C.C.A.) 78 F.(2d) 791; United States v. Bacon (D.C.) 7 F.Supp. 590; United States v. Anderson (D.C.) 8 F.Supp. 88; Whitehead v. United States (C.C.A.) 73 F. (2d) 896; Deutsch v. Aderhold (C.C.A.) 80 F.(2d) 677; Tramp v. United States (C.C.A.) 86 F.(2d) 82.

The repeal of prohibition presented an importantly changed situation to Congress and necessitated a revision of many of the laws relating to liquor. The first of the statutes after prohibition was the Liquor Taxing Act of 1934, 48 Stat. 313, which, however, is not particularly in point here. The next important change in the legislation was the Liquor Law Repeal and Enforcement Act of 1935. To gain a clear conception of the reason for that statute and the objects intended by Congress to be attained by it, requires an examination of the accompanying House and Senate Reports and the hearings before the Judiciary Com-

mittee of the Senate.[3] An attentive reading of these Congressional proceedings in my opinion quite clearly carries the conviction that it was not the intention of Congress to repeal the sections of the internal revenue statutes which had been revived by the Willis-Campbell Act (42 Stat. 222) even though that Act was one of the "Acts supplemental to prohibition" which, by title I of the 1935 Act, was stated to have been repealed. The subject matter here is unusual. In the first place, the Willis-Campbell Act consists of numerous sections of which only section 5 is in point. It did not in terms enact new legislation with respect to the internal revenue statutes but stated that they "shall be and continue in force." Although section 5 is embedded in an act entitled "A Supplement to National Prohibition," it is of itself rather parallel than supplemental to National Prohibition, and is quite different in subject matter from the other sections of the Willis-Campbell Act. Section 5 of the Willis-Campbell Act became section 3 of title 27 of the Code (27 U.S.C.A. § 3) while the internal revenue statutes were embraced in title 26. From the standpoint of Congress it is not unreasonable to assume that it had no thought, in enacting the Liquor Law Repeal and Enforcement Act of 1935, that it was dealing at all with sections of the internal revenue law which had long been in force and constituted such an important part of the legislation affecting the taxation of liquor prior to National Prohibition, and which were contained in a different title of the United States Code from that dealing with National Prohibition. Thus neither the Act of 1935 itself nor any of the Congressional proceedings which have been referred to and which have been brought to my attention, contain any explicit reference to or indication of the repeal of the internal revenue statutes. On the contrary there is much in the reports referred to and indeed in the Act itself which indicates affirmatively the intention and understanding of Congress that the internal revenue statutes were not to be affected by the new Act. Thus section 1 specifically repeals titles I and II of the National Prohibition Act and supplementary and amendatory Acts, and the House and Senate Reports state as to the purpose and scope of the Bill that:

"The major objectives of the Bill are to make a clean sweep of the provisions of the National Prohibition Act which have primarily a prohibition purpose, and to supplement Title III of that Act, which relates to industrial alcohol, with so much of the subsisting provisions of Title II as will be of assistance in administering and enforcing Title III."

It will be remembered that title I of the National Prohibition Act (41 Stat. 305) related to war-time prohibition, title II (27 U.S.C.A. § 4 et seq.) primarily to prohibition proper, and title III (27 U.S.C.A. § 71 et seq.) to provisions affecting industrial alcohol, the latter largely in effect prior to Prohibition, and integrated with the internal revenue laws and regulations affecting the taxation of liquor, and also not affected by the repeal of Prohibition by the Twenty-first Amendment. Helvering v. Druggists' Specialties Co. (C.C.A.) 76 F.(2d) 743. And we find that title I of the 1935 Act deals almost entirely with the subject matter of industrial alcohol, and title II with miscellaneous matters affecting the enforcement of the liquor laws, and title III (40 U.S.C.A. § 304f to 304m) with new legislation regarding disposition of confiscated property. Various sections of the 1935 Act, instead of implying an intention to repeal the separate and distinct internal revenue laws, indicate quite the contrary in fortifying their enforcement. Thus in section 8 (27 U.S.C.A. § 157) it is provided that:

"It shall be unlawful to have or possess any liquor or property intended for use in violating the provisions of this chapter or chapter 3 of this title, or the internal-revenue laws, or regulations prescribed under such title or laws," etc.

And again in the same section:

"Nothing in this section shall in any manner limit or affect any criminal or forfeiture provision of the internal-revenue laws, or of any other law."

Section 15 (27 U.S.C.A. § 165) reads: "If any act or offense is a violation of this chapter or chapter 3 of this title, and also of any other law in regard to the manufacture or taxation of, or traffic in, intoxicating liquor, a conviction for

---

[3] See House Report No. 1601, 74th Congress, 1st Session and the similarly worded Senate Report No. 1330, 74th Congress, 1st Session; and also report of the hearing before the Judiciary Committee of the Senate on S. 3336, August 15, 1935.

such act or offense under the one shall be a bar to prosecution therefor under the other."

Again it appears from the Senate hearing on the Bill that it was introduced by the Treasury Department and its passage approved by the Secretary of the Treasury. It is quite unlikely that legislation which played such an important part in the activities of the Treasury Department with respect to the taxation of liquor would have been intentionally repealed at its request. And it affirmatively appears from the report of the hearing that the Treasury Department was urging the passage of the new law in part for the express purpose of obtaining more effective legislation to enable it to prevent the diversion of tax free denatured alcohol to beverage purposes after chemical treatment in so-called "cracking" plants whereby the denaturants would be removed. Nor is the argument advanced by the defendants' counsel as to the implications from the 1936 Act sustained by an examination of what was said regarding the above quoted section in Senate Report 2028, 74th Congress, Second Session.[4]

Upon careful reading this seems to indicate that it was not the intention of Congress to repeal these statutes at its prior session in 1935. The express re-affirmation of the continued force and effect of the statutes was evidently merely a precautionary measure to remove any implication as to the possibility of their having been repealed. What was said by the Supreme Court in the Stafoff Case, 260 U.S. 477, at page 480, 43 S.Ct. 197, 199, 67 L.Ed. 358, is applicable here:

"Of course a statute purporting to declare the intent of an earlier one might be of great weight in assisting a court when in doubt, although not entitled to control judicial action."

There was apparently no public reason which would have motivated Congress in 1935 to repeal these internal revenue statutes. On the contrary the constitutional repeal by the Twenty-first Amendment, followed by the express although perhaps unnecessary statutory repeal in 1935, furnished a very adequate reason for *not* repealing the internal revenue laws. During Prohibition these statutes although continued in force by the Willis-Campbell Act were of comparatively subordinate importance; but after the repeal of Prohibition the situation was radically changed, and they became again of great importance in protecting the substantial revenue from the manufacture of liquor.

 Nor is the legal situation now presented similar to that passed on by the Supreme Court in the Yuginovich Case. The question there was whether, by reason of

---

[4] Referring to section 415 of the proposed Act (which became Section 413 in the final draft of the Act (26 U.S.C.A. § 1289a) the Report says:

"Section 415 declares that all internal-revenue laws of the United States in regard to the manufacture and taxation of, and traffic in, distilled spirits, wines, and malt liquors, and all penalties for violations of such laws, that were in force at the time the National Prohibition Act was enacted, shall be and continue in force, except as they have been repealed or amended by acts other than (1) title II of the National Prohibition Act as amended and supplemented, and (2) section 1 of the Liquor Law Repeal and Enforcement Act, and except as they may be modified by, or may be inconsistent with, this act. This section is comparable to section 5 of the Willis-Campbell Act, approved November 23, 1921, after the Supreme Court of the United States, in the case of United States v. Yuginovich [256 U.S. 450, 41 S.Ct. 551, 65 L.Ed. 1043] had ruled that certain internal-revenue statutes had been repealed by the National Prohibition Act. Following the enactment of section 5

the Supreme Court rendered an opinion in the case of United States v. Stafoff [260 U.S. 477, 43 S.Ct. 197, 67 L.Ed. 358] in which it held that the effect of section 5 was to restore fully, as if they had been reenacted in terms, those sections of the internal-revenue laws which were in effect when the National Prohibition Act was enacted and were not in direct conflict with that act, or section 5. Section 1 of the Liquor Law Repeal and Enforcement Act, approved August 27, 1935, repealed title II of the National Prohibition Act and all acts supplementary thereto. Prior to the enactment of the National Prohibition Act, a considerable body of laws relating to the manufacture and taxation of intoxicating liquors had been built up. Your committee feels that those laws should be reaffirmed in order to avoid any implication that they may have been permanently repealed by the National Prohibition Act. It should be noted that this section does not reaffirm any laws which the Congress has specifically and deliberately amended or repealed."

the different and lesser penalties in the National Prohibition Act, the severer penalties of somewhat parallel internal revenue statutes were impliedly repealed. Here there is no room for argument as to an implied repeal, the question being whether the express repeal of the Willis-Campbell Act of itself effected an express repeal of the revenue statutes. This question must be answered not from the mere form of words used in one section of the 1935 Act but by a consideration of the statute as a whole, interpreted in the light of Congressional proceedings affecting it, and the situation that Congress had before it. In construing repealing statutes, it has frequently been held that a literally express repeal of a statute will not prevail where the intention of the legislative body is satisfactorily shown to be to the contrary, and this can be so shown by reference to other parts of the same statute, to other acts in *pari materia,* passed before or after, or to other contemporaneous legislation not strictly in *pari materia,* and to relevant facts and circumstances existing at the time. Smith v. People, 47 N.Y. 330, 337; Howlett v. Cheetham, 17 Wash. 626, 50 P. 522; Indianapolis Union R. Co. v. Waddington, 168 Ind. 448, 82 N.E. 1030; First Nat. Bank v. Lee County Oil Co. (Tex.Com.App.) 274 S.W. 127; Sutherland on Stat.Const. §§ 218, 242; 59 C.J. 900, 1102; Ex parte Public Nat. Bank, 278 U.S. 101, 104, 49 S. Ct. 43, 73 L.Ed. 202.

Possibly the matter may be more simply viewed in a broader aspect. The National Prohibition Act did not expressly repeal the internal revenue statutes, and, so far as legally possible, Congress expressed its intention in section 5 of the Willis-Campbell Act (27 U.S.C.A. § 3) that they should continue in force despite prohibition legislation. The effective repeal of prohibition was by constitutional mandate, and the subsequent congressional repeal was not legally necessary but only desirable for statutory clarification. Clearly the constitutional repeal by the Twenty-first Amendment did not in any way impair but on the contrary reinvigorated the importance of the internal revenue statutes, which were based on the distinct power to tax. Whatever shadow was cast upon the revenue statutes by prohibition was effectively dispelled by the repealing Amendment. Case v. Alderson (C.C.A.4) 76 F.(2d) 25. In formally and literally repealing section 5 of the Willis-Campbell Act, Congress was doing no more than removing from the physically existing printed statutes one that was of no further effective significance but only of historical interest. To give the formal repealing section of the 1935 Act the dignity and importance of an intended repeal of the recently revivified and highly important revenue statutes would be to glorify form at the expense of substance, in a most glaring way, and to accomplish a result mischievous to the public interests, apparently against the real intent of Congress. The canons of statutory construction do not inexorably require such an unfortunate conclusion.

Nor does the contention now made by the defendants find support in current practice in this or, so far as I am advised, in other districts in prosecutions for violation of the internal revenue laws occurring during the period in question. Counsel have not been able to point to any case in which their contention has been upheld or even made. There is no indication in the U.S. Code 1934 edition, supplements I and II, or in the United States Code Annotated that the compilers thereof understood these statutes were repealed by the Act of 1935.

I conclude therefore that the internal revenue statutes on which the indictment was based were not repealed by the Act of 1935.

Apart from the substantial question discussed, the conclusion as to which requires an overruling of the motion in arrest of judgment, it is doubtful whether the latter could technically be maintained even if the substantial question had been decided otherwise. As it is conceded that the questioned statutes were at least in force from June 26, 1936 and as the substantive counts of the indictment, that is those other than the first count for conspiracy, alleged violations on June 30, 1936, it is apparent the motion could not prevail as to those counts. And it is at least very doubtful whether the motion could properly be sustained as to the conspiracy count as it charges a continued conspiracy during a period subsequent to June 26, 1936.

The motion for a new trial, as distinct from the motion in arrest of judgment, was based on a number of exceptions taken during the trial of the case, to testimony or instructions of the court, and to a remark by the Assistant United States Attorney in jury argument. But these were fully discussed in the oral argument and after consideration seem to present no matter of a

substantial or prejudicial nature to the defendants. Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314.

The motions, both for arrest of judgment and for a new trial, are therefore overruled.