Harry Alston SEAWELL, Jr., Appellant,

v.

UNITED STATES of America, Appellee.

No. 7362.

United States Court of Appeals Fourth Circuit.

Argued March 14, 1957.

Decided May 7, 1957.

Russell T. Bradford, Norfolk, Va., for appellant.

John M. Hollis, Asst. U. S. Atty., Norfolk, Va. (L. S. Parsons, Jr., U. S. Atty., Norfolk, Va., on brief), for appellee.

Before SOPER and SOBELOFF, Circuit Judges, and HUTCHESON, District Judge.

SOPER, Circuit Judge.

This appeal is taken from a sentence of imprisonment imposed upon Harry Alston Seawell, Jr. when he was found guilty in a trial before the District Judge without a jury of having in his posses-sion unregistered distilling apparatus for the unlawful distillation of spirits, making fermented mash fit for the distillation of spirits on unauthorized premises, carrying on the business of a distiller without having given bond as required by law, and having in his possession distilled spirits subject to tax in unstamped containers in violation of §§ 5174, 5216, 5616, 5008(b), and 5642 of the Internal Revenue Code, 1954, 26 U.S.C.A. §§ 5174, 5216, 5616, 5008(b), 5642. At the same time Shelton Oscar Stokley and Sam Talmadge Winstead, co-defendants, were convicted of one or more of these offenses. Only Seawell appealed. The questions involved are whether the Revenue agents who arrested the defendant were justified in taking him into custody without a warrant and whether certain incriminating articles taken from his person were admissible in evidence, and whether substantial evidence was offered at the trial to support the verdict of guilty.

There is little or no dispute as to the facts. On Friday, October 5, 1956, Revenue agents discovered a 250 gallon illicit still in a wooded section of Southampton County, Virginia, about 5 miles from the town of Franklin. The still was located in the woods at some distance from a State dirt road which connected two other State highways. The approach to the still was an old logging road, not readily discernible, which ran from the dirt road into the woods in a northerly direction for a distance of about three-quarters of a mile when it came to a dead end. Along the west side of the logging road for a part of the way was a wire fence. About half way in the logging road the fence was broken down and a path, starting from the wire fence, lead in a westerly direction about 400 yards to the still.

The agents did not seize the still on that day but returned for further investigation at 3:30 P.M. on the following Monday, October 10. When they reached the intersection of the logging road and still path they noticed a 1942 Ford car parked ahead of them on the logging road and a 1941 Ford car parked in the

woods about 65 yards west of the fence. The body of the latter car had been removed and replaced by a "homemade" flat bed of rough lumber. (It was shown at the trial that a year before the arrest this truck was seen in the rear of the defendant's house at Fentress, Virginia, about 50 miles distant from the still site.) Believing that the still was in operation and not being ready to raid it the agents started back through the woods in an easterly direction toward one of the highways and as they did so they ran across the defendant, Seawell, lying asleep on the ground in the woods at a distance of about 65 yards from the intersection and about 400 yards from the still. A flashlight lay on the ground beside the man and there was a strong odor of alcohol about his person, and brown stains on his trousers, his sweat shirt and his shoes, which appeared to have been made by whisky mash. The agents then arrested the defendant, who stated that he had been brought to the place by a man whose name was unknown to him. He gave no other explanation of his presence in the woods. After the arrest the agents searched the defendant and found upon his person a registration card indicating that he was the registered owner of a 1947 Ford car which, on the evening of the same day, was driven into the logging road by Stokley and parked at the intersection loaded with 2,000 pounds of sugar. After the car entered the logging road the driver alighted and wiped out the marks of the tires entering the woods with a pine branch. In the glove compartment of this car the agents found some advertisements addressed to the defendant, along with two brass gauge glass fittings for a low pressure type boiler, such as was being used at the still. The agents found 280 gallons of illicit whisky at the still, together with 350 gallons of live mash and an undetermined quantity of spent mash. There was no fire under the still but the spent mash and the boiler were very hot, indicating that the still had been in operation during the late hours of the morning.

Five minutes after finding the defendant the agents came across Winstead, who was also asleep on the ground in the woods with a flashlight beside him. He was lying behind the automobile which the agents had seen parked on the logging road. In this car was found a quantity of cork stoppers of the type used in five-gallon jugs. Winstead's clothing and shoes bore evidence of mash and there was a strong odor of alcohol about him.

The defendant contends that the arrest was illegal because it was made without warrant and without probable cause. The applicable rule as to arrests for felony without warrant is not in dispute. In Brinegar v. United States, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1310, 93 L. Ed. 1879, the Supreme Court said:

"In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.

" 'The substance of all the definitions' of probable cause 'is a reasonable ground for belief of guilt.' McCarthy v. De Armit, 99 Pa. 63, 69, quoted with approval in the Carroll opinion. 267 U.S. at page 161, 45 S.Ct. at page 288. And this 'means less than evidence which would justify condemnation' or conviction, as Marshall, C. J., said for the Court more than a century ago in Locke v. United States, 7 Cranch 339, 348, 3 L.Ed. 364. Since Marshall's time, at any rate, it has come to mean more than bare suspicion: Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. Carroll v. United States, 267 U.S.

132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543.

"These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice."

■■ In the absence of an applicable federal statute the law of the state where an arrest without warrant takes place determines its validity, United States v. Di Re, 332 U.S. 581, 589, 68 S.Ct. 222, 92 L.Ed. 210; and in Virginia the general rule prevails that reasonable or probable cause is essential to the validity of such an arrest. United States v. Cotter, D.C.E.D.Va., 80 F.Supp. 590, 592.

■ We think that the circumstances furnished probable cause for the arrest without warrant in this case. The man was found asleep in the woods on an October afternoon with a flashlight by his side. He was redolent of the fumes of intoxicating liquor, his clothing was stained with what seemed to be mash and he was within a few hundred yards of a hidden distilling apparatus of substantial size, which the agents had previously discovered, and quite near were two automobiles concealed in the woods, of the kind suitable for transporting materials to the still and carrying the finished product away. He told the agents an incredible story as to how he came to the place and gave no explanation whatever as to why he was there. There was no opportunity in this situation to obtain a warrant of arrest and if the agents had not taken the man into custody they would have been censurable for negligence of duty.

■ The motion to suppress the evidence of the possession by the defendant of the flashlight and of the registration card for the 1947 car was properly overruled. Since the arrest was justified by the existence of probable cause, it was proper to search the person of the defendant and to offer in evidence articles in his possession which could reasonably be thought to be useful in the perpetration of the offense. Obviously, this was true of the registration card, which indicated that the defendant was the owner of the 1947 car that was driven into the road leading to the still the same evening after dark, laden with a substantial quantity of an article customarily used in the manufacture of illicit liquor. The flashlight was also useful for men waiting in the woods for the arrival at night of material to be used in further operations of the still.

■ These cumulative circumstances furnished a substantial basis for the finding of guilt. The location of the illicit still of substantial size in the woods, the presence of vehicles needed to carry material to and from the still, the ownership or possession of these vehicles by the defendant, the stealthy arrival at the still site in the nighttime of material for the manufacture of whisky in the defendant's car; his presence in the woods in the neighborhood of the illicit operation, with his co-defendant asleep on the ground, each marked with signs of alcoholic liquors, furnish strong evidence of complicity in the crime, especially in view of the fact that the defendant offered no evidence of any kind to combat the inferences of guilt that might fairly be drawn from these circumstances.

Affirmed.