**UNITED STATES of America**

v.

**ONE 1955 FORD SEDAN, SERIAL NO. U 5 NT 126–016.**

**Civ. A. No. 9076.**

United States District Court
D. Maryland,
Civil Division.

Aug. 29, 1958.

Leon H. A. Pierson, U. S. Atty., John R. Hargrove, Asst. U. S. Atty., Baltimore, Md., for plaintiff.

Sol. C. Berenholtz, Charles B. Heyman, Baltimore, Md., for Fallsway Finance Corp.

CHESNUT, District Judge.

On August 13, 1956 the United States filed a complaint for the forfeiture of a 1955 Ford Sedan, on the ground that it transported an article of "contraband firearms" contrary to the provisions of 49 U.S.C.A. §§ 781–788. After some delay the Fallsway Finance Corporation was permitted to intervene and file an answer to the suit for forfeiture as claimant of the automobile. It had financed the purchase of the automobile by one Dreher who had purchased it under a conditional sales contract. Dreher did not contest the forfeiture.

The principal facts established as the reason for the seizure and forfeiture of the automobile as developed by testimony submitted on behalf of the Government at the hearing of the case were the following:

On February 11, 1956, the local Baltimore City police, about 9:30 P.M., saw a man, afterwards identified as Earl Dreher, the registered owner of the automobile, walking in the 1200 Block of Druid Hill Avenue and apparently concealing a large object under his overcoat. On suspicion he was stopped, questioned and the police found that he was carrying a sawed-off shot gun having a barrel of less than 18 inches in length (actually 12 7/16 inches), and with the stock of the barrel broken, with the severed piece of the broken stock, together with four shells, in his possession. He was arrested, taken before the local magistrate, pleaded guilty to the charge of carrying a concealed weapon and sentenced to thirty days in jail.

The local police notified federal agents on account of the nature of the weapon. The latter promptly interviewed Dreher at the station house and obtained from him a written signed statement dated February 13, 1956, in which, in substance, he stated that just before his arrest he had driven his car carrying the gun and parked it within half a block of where he had been arrested and where he was about to enter the building containing the apartment of his "girl friend" at 1226 Druid Hill Avenue. He said that he knew "having the gun was a violation"; that he had on other occasions transported the gun in his car and that he had been given the gun by one Robert Tyler with whom he had been jointly convicted of burglary a few years previously and for which offense he had received a two-year probation. He also said that in 1953 he had received an honorable discharge from the Army where he had contracted tuberculosis, for which he was hospitalized until 1955 at the Veterans' Hospital in Baltimore, and that he had a 100% disability rating by the Veterans' Service. The agents further learned on inquiry that the gun had not been registered as required by law at the National Firearms Office.

Acting on this information, the agents promptly on February 13, 1956, went to the place where Dreher had told them he had parked the automobile just prior to his arrest, found the automobile at that place still parked there, and seized it in accordance with the Government's contention that it was subject to forfeiture. In a later written statement made a few days thereafter, Dreher also admitted that he himself had about December 1955 used what he called his "jeweler's saw" in sawing off the original length of the barrel of the gun. At the hearing of the case there was also independent evidence in substantial corroboration of Dreher's statement that he, in company with one Thompson, had actually sawed off the gun in the apartment of his "girl friend" (she said she is his wife) Shirley Hawkins, at 1226 Druid Hill Avenue. The signed statements by Dreher were submitted at the hearing, objected to by the claimant and the question of their admissibility was then reserved. At the hearing the Court suggested the desirability of having the assistance and testimony of Dreher if available; but apparently he could not be found for service.

There was no evidence offered by the claimant with respect to the facts regarding the gun or Dreher's relation to it. The only evidence offered by the claimant was to the effect that in 1953 it had financed for Dreher the purchase of another automobile, at which time from investigation as to Dreher's responsibility it was learned that he had been a sergeant in the Army and was believed to be a reputable and responsible customer. In 1955 Dreher bought another automobile from the claimant without its further inquiry as to his standing and credit responsibility. Under the customary form of such financing the legal title to the automobile was in the claimant under a conditional sales contract to Dreher. At the time of Dreher's arrest the amount then still due to the finance company was $1,551.73. At the conclusion of the hearing the Court expressed a wish to have counsel submit briefs.

After a somewhat unusual delay these have now been submitted and considered.

The decision to be made requires the construction and application of several Acts of Congress which present some questions, so far as I have been able to learn from counsel or personal examination, that have not heretofore been specifically decided. The contention of the claimant is that the statutes relied upon by the Government as the basis for the forfeiture do not constitute sufficient authority therefor; and even if they do, nevertheless under the facts there was not probable cause for the seizure of the automobile by the Government.

49 U.S.C.A. §§ 781–788 constitute the basic statutes here involved. They constitute Chapter 11 of the Transportation Statutes codified in title 49 U.S.C.A. The black letter heading of Chapter 11 reads as follows: "Seizure and Forfeiture of Carriers Transporting, Etc., *Contraband Articles*." The directly relevant portions of section 781(a) provide "It shall be unlawful (1) to transport, carry or convey any contraband article, in, upon, or by means of any * * * vehicle * * *; (2) to conceal or possess any contraband article in or upon any * * * vehicle * * *; (3) to use any * * * vehicle * * * to facilitate the transportation, carriage, conveyance, concealment, receipt, possession, purchase, sale, barter, exchange, or giving away of any contraband article." "(b) As used in this section the term 'contraband article' means * * * (2) Any firearm, with respect to which there has been *committed any violation of any provision of the National Firearms Act, as now or hereafter amended,* or any regulation issued pursuant thereto; * *." (Italics supplied.) Section 782 provides "Any * * * vehicle * * * which has been or is being used in violation of any provision of section 781 of this title * * * shall be seized and forfeited * * *," (with exceptions not here in point). Section 784 provides in substance that with respect to the procedure in forfeiture proceedings under sec-

tion 782 the related provisions of the customs laws shall apply. The revised procedural provision of forfeiture proceedings under the customs law is to be found in 19 U.S.C.A. § 1615, which provides that in such a forfeiture proceeding, if and when the Government has established probable cause for the seizure, the burden of proof if to the contrary is placed upon the claimant of the article.

So far it will have been noted that to authorize the forfeiture of a vehicle for transportation of a contraband firearm, the firearm referred to must have been one "with respect to which there has been committed any violation of any provision of the National Firearms Act as now or hereafter amended."

The Government contends that the provision of the National Firearms Act here referred to in section 781 is to be found in the Internal Revenue Code of 1954, 26 U.S.C.A. §§ 5821, 5841 and 5848. Section 5848 defines the particular kind of firearm here involved as "a shot gun or rifle having a barrel of less than 18 inches in length, or any other weapon * * * from which a shot is discharged by an explosive if such weapon is capable of being concealed on the person". Section 5821 imposes a tax upon the making in the United States of such a firearm (whether by manufacture, putting together, alteration, any combination thereof or otherwise) as here defined, and section 5841 provides that "every person possessing a firearm shall register, with the Secretary or his delegate, the number or other mark identifying such firearm, together with his name, address, place where such firearm is usually kept, and place of business or employment, * * * *".

The Government contends that on the facts stated there was ample probable cause for the seizure of the automobile in that its registered owner, Dreher, had used it for convenience in transporting a sawed-off shot gun (that is a contraband firearm) which he himself had manufactured by alteration and as to which there

was a violation of the National Firearms Act (as now contained by codification in the Internal Revenue Act of 1954) in that no tax had been paid for the making by alteration of the contraband firearm, and no registration had been made as required by the Act, and no declaration of intention had been made by Dreher. In the latter connection it also is to be noted that when Dreher was interviewed by the federal agents he made no suggestion that he had at any time paid any tax or filed any notice with respect to making the contraband firearm by his own alteration; and under the unusual circumstances regarding his possession and action with regard to the firearm, it would have been unreasonable to think that any formal attempted compliance had been made by him with regard to the requirement of sections 5821 and 5841.

■ The principal and most important defense raised by the claimant against the forfeiture is based on its contention that the reference to the National Firearms Act made in sections 781 and 782 is meaningless because the Act has been repealed. Particularly attention is called to section 18 of the National Firearms Act which stated that the Act might be cited as the National Firearms Act, and it is said that as this section has not been specifically re-enacted there is, therefore, now no National Firearms Act. A simple chronological review of the Congressional action with respect to the subject matter will, I think, show the contention to be without substantial basis.

The National Firearms Act was originally enacted June 26, 1934, 48 Stat. page 1236. It provides in part for the regulation of certain types of firearms in the United States, and also made provisions with regard to the transportation of such firearms if and when unlawfully imported. It also provided, possibly more importantly (as in the case of narcotics), for the taxation of such firearms, and made important provisions with re-

gard to the registration and transfer thereof.

When it was decided by Congress to codify the revenue tax laws into the Revenue Act of 1939, it was found desirable to include in the new Code the taxing provisions of the National Firearms Act. Thus, for instance, sections 1 and 5 of the National Firearms Act were codified in the Revenue Act of 1939 as sections 2733 and 3261, 53 Stat. 294, 393. However, the Revenue Act of 1939 did not appropriately contain specific provisions with respect to the transportation of untaxed firearms within the United States generally although Congress in 1938 had enacted another Act known as the Federal Firearms Act, 52 Stat. 1250, 15 U.S.C.A. §§ 901–909. The constitutional basis for this latter Act was the regulation of interstate commerce, while the constitutional basis for the taxing provisions of the National Firearms Act, as in the case of narcotics, was the federal taxing power. Sonzinsky v. United States, 300 U.S. 506, 57 S.Ct. 554, 81 L.Ed. 772. As the National Firearms Act as originally written or as subsequently transferred in February 1939 into the Revenue Act of that year did not contain any provision for the forfeiture of vehicles used in the transportation of contraband firearms, Congress, on August 9, 1939, enacted provisions therefor in 53 Stat. 1290 which have now been codified as Chapter 11 of title 49 U.S.C.A. §§ 781–788 dealing with transportation generally, for a more effective law enforcement. This is made abundantly clear by the Committee Report of the House in recommending the passage of H.R. 6556, July 10, 1939 (76th Cong.1st Sess. Report No. 1054, a copy of which has been filed with the Clerk). It will be noted that in at least three places in 49 U.S.C.A. §§ 781–788 Congress referred to the National Firearms Act in so many words; and likewise similar reference is made in various places in the extended House Committee Report, and the Senate Report which in substance adopted the House Report. It is also to be noted that section 781, in referring to the National Firearms Act, speaks of it "as now or hereafter amended". The only reasonable interpretation of this language in the Act of August 9, 1939 and as further explained in the House Committee Report, is that Congress understood that the National Firearms Act was a part of the laws of the United States to the extent that it had not been repealed.

The only repeal of the National Firearms Act was the general provision in sections 4 and 5 of the Act of Congress of February 10, 1939, 53 Stat. 1, enacting the Revenue Act of that year.[1]

1. This section reads as follows:
"Sec. 4. Repeal and Savings Provisions—(a) The Internal Revenue Title, as hereinafter set forth, is intended to include all general laws of the United States and parts of such laws, relating exclusively to internal revenue, in force on the 2d day of January 1939 (1) of a permanent nature and (2) of a temporary nature if embraced in said Internal Revenue Title. In furtherance of that purpose, all such laws and parts of laws codified herein, to the extent they relate exclusively to internal revenue, are repealed, effective, except as provided in section 5, on the day following the date of the enactment of this act. (b) Such repeal shall not affect any act done or any right accruing or accrued, or any suit or proceeding had or commenced in any civil cause for the said repeal, but all rights and liabilities under said acts shall continue, and may be enforced in the same manner, as if said repeal had not been made; nor shall any office, position, employment, board, or committee, be abolished by such repeal, but the same shall continue under the pertinent provisions of the Internal Revenue Title. (c) All offenses committed, and all penalties for forfeitures incurred under any statute hereby repealed, may be prosecuted and punished in the same manner and with the same effect as if this act had not been passed. (d) All acts of limitation, whether applicable to civil causes and proceedings, or to the prosecution of offenses, or for the recovery of penalties or forfeitures, hereby repealed shall not be affected thereby, but all suits, proceedings, or prosecutions, whether civil or criminal, for causes arising, or acts done or committed, prior to said repeal, may be commenced and prosecuted within the same time as if this act had not been passed. (e) The

■ Counsel for the claimant cites certain judicial decisions with respect to limitation on the judicial power in interpreting the legislative action. For instance, that judicial power cannot properly be exercised to *supply* an essential word or phrase if inadvertently omitted and not necessarily included in the meaning of the context. See Iselin v. United States, 270 U.S. 245, 46 S.Ct. 248, 70 L.Ed. 566; ʼCarr-Consolidated Biscuit Co. v. Moore, D.C.Pa., 125 F. Supp. 423; In re Shear, D.C.Cal., 139 F. Supp. 217. But the problem here is quite different. The primary rule for judicial interpretation is to ascertain from the words and their use in the context of the subject matter, what was the intention of Congress. Here it seems to me to be very plain that Congress in using the phrase "National Firearms Act" (a convenient short title for a new type of legislation) was referring to those sections of the Revenue Act of 1939 into which was transposed the similar provisions of the National Firearms Act. Of course since 1939 there have been further amendments in detail of the taxing sections of the Revenue Act of 1939 and of some of the sections of the new Chapter 11 of title 49 of the Transportation Act. But the principle here involved has not been thereby changed.

In 1937 I considered a somewhat similar question of statutory construction with respect to the effect of the liquor law repeal and enforcement act of 1935. The conclusion here reached is, I think, in accord with the principle there applied, particularly in the paragraph reading " * * * In construing repealing statutes, it has frequently been held that a literally expressed repeal of a statute will not prevail where the intention of the legislative body is satisfactorily shown to be to the contrary, and this can be so shown by reference to other parts of the same statute, to other acts in *pari materia* passed before or after, or to other contemporaneous legislation not strictly in *pari materia*, and to relevant facts and circumstances existing at the time". United States v. Minker, D.C., 19 F.Supp. 409, at page 414. This view of the effect of 49 U.S. C.A. § 781 was applied in the case of United States v. One 1950 Pontiac, D.C. W.D.Pa.1953, 117 F.Supp. 582, the only reported case found in which an automobile was forfeited for transporting a sawed-off shot gun.

The claimant contends that even if the above interpretation of title 49 U.S.C.A. § 781 is correct, nevertheless the Government has not shown the existence of probable cause for the forfeiture of the automobile. Here it is important to note that by section 784 the basis for the forfeiture is the same as that provided for forfeiture under the customs service.[2]

authority vested in the President of the United States, or in any officer or officers of the Treasury Department, by the law as it existed immediately prior to the enactment of this act, hereafter to give publicity to tax returns required under any internal revenue law in force immediately prior to the enactment of this act or any information therein contained, and to furnish copies thereof and to prescribe the terms and conditions upon which such publicity may be given or such copies furnished, and to make rules and regulations with respect to such publicity, is hereby preserved. And the provisions of law authorizing such publicity and prescribing the terms, conditions, limitations, and restrictions upon such publicity and upon the use of the information gained through such publicity and the provisions of law prescribing

penalties for unlawful publicity of such returns and for unlawful use of such information are hereby preserved and continued in full force and effect.

"Sec. 5. Continuance Of Existing Law. —Any provision of law in force on the 2d day of January 1939 corresponding to a provision contained in the Internal Revenue Title shall remain in force until the corresponding provision under such Title takes effect."

2. Title 49, § 784 in full reads:

"All provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of vessels and vehicles for violation of the customs laws; the disposition of such vessels and vehicles or the proceeds from the sale thereof; the remission or mitigation of such forfeiture; and the compromise of claims

The related provisions for forfeiture under the customs laws are found in 19 U.S.C.A. § 1602 et seq. The particular section here in point is section 1615 which in substance provides that in such forfeiture cases if the Government shows there has been probable cause for the seizure, the burden of proof to the contrary is placed on the claimant of the thing seized. It thus becomes important to note that in this particular forfeiture proceeding the Government establishes its right to forfeiture if the circumstances in relation to the seizure constitute probable cause to be determined by the adjudicating court. In this respect the forfeiture of an automobile for transportation of contraband firearms or narcotics differs from other forfeiture cases in that the Government is not obliged to establish a prima facie case strictly in accordance with the ordinary rules of proof, but is only required to show probable cause. Probable cause is a well known term in the law which indicates something more than mere suspicion but may be something less than would constitute a prima facie case in strictly legal proof, provided that the finding of probable cause is a reasonable one under all the circumstances. Thus, facts and circumstances in a particular case may constitute probable cause even though not shown to have existed by strictly legal proof in a court of law; or, in other words, the scope of probable cause is broader than the establishment of a prima facie case. Counsel for the claimant argues that probable cause has not been shown here because Dreher's statement is not admissible as hearsay evidence. At the hearing of the case I took that question of evidence under consideration but now conclude that the statement is admissible and when admitted constituted, with the other facts above recited, probable cause for the seizure. In considering its admissibility it is to be borne in mind that the nature of the proceeding is one in rem against the vehicle which, for the purposes of forfeiture, is considered as the offending thing. Dreher was the duly registered owner of the automobile and the driver of it when it transported the contraband gun. As such, he had direct first hand knowledge of the facts and as his conduct was unlawful, the statements would have been admissible in evidence against him in a criminal prosecution, if voluntary. I do not think they are inadmissible on the ground of hearsay evidence. This is not a proceeding against the claimant but against the automobile. The claimant's only relation to it was that under the papers in the case it held title to it as security for the ultimate payment of the purchase price. Dreher's statements were directly relevant to the subject matter and, in my opinion, together with the other facts, constituted probable cause for the seizure. In a case involving a very similar factual situation regarding the seizure of an automobile for transportation of narcotics (likewise included in § 781) Circuit Judge Sanborn, speaking for the 8th Circuit, in a fully considered and convincing opinion, held that the statements of the owner of the automobile were admissible. Ted's Motors v. United States, 217 F.2d 777.

Counsel for the claimant cites to the supposed contrary United States v. One 1949 Pontiac Sedan, 7 Cir., 194 F.2d 756, but on examination I think the factual situation there involved makes it distinguishable or inapplicable as did Circuit Judge Sanborn.

and the award of compensation to informers in respect of such forfeitures shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under the provisions of this chapter, insofar as applicable and not inconsistent with the provisions hereof: Provided, that such duties as are imposed upon the collector of customs or any other person with respect to the seizure and forfeiture of vessels and vehicles under the customs laws shall be performed with respect to seizures and forfeitures of vessels, vehicles, and aircraft under this chapter by such officers, agents, or other persons as may be authorized or designated for that purpose by the Secretary of the Treasury."

The claimant also argues that there was not sufficient probable cause to show that the sawed-off shot gun was a violation of section 5841 of 26 U.S.C.A. with regard to the registration requirement. But it will be remembered that Dreher stated that he knew the possession of the gun was "a violation". He stated also that a few days before his arrest he had been asked by police officers if he had a sawed-off shot gun and he denied it because he was "scared". He himself had altered the lawful longer barrel of the gun by sawing it off. Under these facts it would be fanciful to suppose that he had in fact registered such a gun which he knew to be unlawful in his possession. An analogy can be found in practical procedure with respect to the finding of an unlawful liquor still where it is located in a thick woods far removed from a settled district, or in a dwelling house. When a federal Alcohol Tax Unit officer finds a still so located without a display of proper registration as required by section 5601 of 26 U.S.C.A. such a still subject to confiscation is customarily destroyed on the site. In the prosecution by indictment of a person found in the management of such a still, it is not required as a matter of prima facie proof by the Government that the still so found had in fact not been registered although, of course, the defendant could properly introduce evidence to the contrary. Rossi v. United States, 289 U.S. 89, 53 S.Ct. 532, 77 L.Ed. 1051; Seawell v. United States, 4 Cir., 243 F.2d 909.

Counsel for the claimant calls attention to the fact that at the hearing when Mr. McDermott of the Federal Tax Unit was asked how he knew that Dreher's gun had not been registered, he replied that he had made inquiry by telephone at the government office and had received an answer, confirmed by a written statement, that it had not been registered. The answer was objected to and it appears that at the time the answer was stricken evidently, I think, because not the best evidence on the point. At that time it had not been sufficiently brought to my attention that the particular forfeiture proceedings were in accordance with forfeiture under the customs laws and that in this case it was sufficient for the Government to show "probable cause" for the seizure rather than strict legal proof for forfeiture. After further consideration of the matter, I am now of the opinion that the answers should not have been stricken even though not the best evidence available, because, in showing probable cause it is not necessary to have immediately available strict legal proof of the reasonable inference from facts otherwise known. There was no suggestion at the time by counsel for the claimant that the gun had in fact been registered. And all the circumstances made it highly probable that it had not been. I do not think the ruling now made on the objection is prejudicial to the claimant; but if counsel desire to re-open the case for further evidence on the point, I shall be glad to do so.

Another point made by the claimant is that probable cause did not exist because circumstances did not show that the gun was contraband within the definition of the statute. In 26 U.S.C.A. § 5848 the definition includes "a shot gun having a barrel of less than 18 inches in length, or any other weapon, * * * from which a shot is discharged by an explosive if such weapon is capable of being concealed on the person". The term "shot gun" is further defined as a gun "intended to be fired from the shoulder". The point made is that as the particular gun had a broken stock it could not have been fired from the shoulder and therefore is not within the definition. I am not disposed to think this narrow distinction is sound. Dreher was in possession of the broken stock. It does not appear that it could not have been repaired, and there was evidence that it could have been fired from the waist at short range; but however that may be, it is to be noted that the definition of "firearm" also includes a weapon which could be concealed on the person, and Dreher was arrested when he was in

possession of the weapon concealed under his clothing.

█ The claimant naturally stresses the hardship to it in the loss of valuable property right in the automobile where it was innocent of any wrongdoing. It also appears that after the seizure was made in February 1956, the claimant, as permitted under forfeitures in the customs service, applied for remission of forfeiture to the Attorney General which was, after some months, declined and then the Government filed this suit for forfeiture. The reasons for the exercise of his discretion by the Attorney General in the particular matter do not appear; but the claimant says that it had no reason to suspect illegal action by Dreher for whom it had financed an automobile purchase in 1953 which had been satisfactorily discharged and therefore had no reason to suspect any trouble in subsequently financing the purchase of this particular automobile in 1955. At neither time had the claimant made any examination of a criminal record for Dreher. If it had made such an examination in 1953 it would not have disclosed such a record; but if it had made such an examination in 1955 the record would have been discovered. But however that may be, the question of enforcement of the forfeiture must be considered in connection with the applicable Acts of Congress and in the background of its evident purpose to strengthen law enforcement with respect to such a potentially dangerous firearm as a sawed-off shot gun. While there are some exceptions to liability for forfeiture in 49 U.S.C.A. § 782 (not applicable here) there is no provision for the remission of forfeiture with respect to a contraband firearm similar to that contained in 18 U.S.C.A. § 3617 with regard to remission of forfeiture of automobiles involved in violation of the liquor laws. For illustration see United States v. One 1955 Model Buick 4-Door Sedan, 4 Cir., 241 F.2d 90.

█ In short summary I find and conclude that 49 U.S.C.A. §§ 781 and 782 authorize the forfeiture of an automobile used to transport a contraband firearm which is found in violation of 26 U.S.C.A. §§ 5481 and 5848, and that there was probable cause for the seizure and forfeiture of the particular automobile as authorized by 49 U.S.C.A. § 784.

I therefore conclude that the Government is entitled to a decree for the forfeiture of the automobile in question.