Audry Mack LANE, Appellant,

v.

UNITED STATES of America, Appellee.

No. 19909.

United States Court of Appeals Fifth Circuit.

Aug. 8, 1963.

L. Clayton Rivers, Jr., El Paso, Tex., for appellant.

M. H. Raney, Asst. U. S. Atty., El Paso, Tex., Ernest Morgan, U. S. Atty., San Antonio, Tex., Fred J. Morton, Asst. U. S. Atty., El Paso, Tex., for appellee.

Before CAMERON, BROWN and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

This is an appeal from a conviction on three counts of violation of the narcotics and tax laws.[1] The Government charged that Audry Mack Lane, the defendant-appellant, imported a bindle[2] of heroin into this country from Mexico, concealed it after importation, and failed to register and pay the tax on it—all in violation of the law.[3] The jury returned a verdict of guilty upon which the trial court entered judgment and sentenced Lane to twelve years on the first two counts and five on the last. The sentences are to run concurrently.

March 13, 1962, an informer, said to be reliable, telephoned the Customs office to say that Lane had puchased heroin in Juarez, Mexico. Customs agents located Lane's automobile, parked in El Paso, Texas, in the vicinity of the International Bridge connecting the two cities, and put it under surveillance. After a while they saw Lane walking from the direction of the bridge to his parked car. Another man was already in it. Lane got in and drove away and, after taking a devious route through South El Paso, headed east out of town on U.S. 80. En route he

---

1. "That on or about March 13, 1962, in El Paso County, Texas, within the El Paso Division of the Western District of Texas, AUDRY MACK LANE knowingly and fraudulently imported and brought into the United States contrary to law, a quantity of narcotic drugs, to wit, One Bindle of Heroin, and the said AUDRY MACK LANE well knew such importation was contrary to law.

"That on or about March 13, 1962, in El Paso County, Texas, within the El Paso Division of the Western District of Texas, AUDRY MACK LANE knowingly and fraudulently concealed and facilitated the concealment of a quantity of narcotic drugs, to wit, One Bindle of Heroin, after the same had been imported and brought into the United States contrary to law, the said AUDRY MACK LANE well knowing such importation was contrary to law.

"That on or about March 13, 1962, in El Paso County, Texas, within the El Paso Division of the Western District of Texas, AUDRY MACK LANE, being then and there a person required to register with the Collector of Internal Revenue and to pay a special tax, knowingly and unlawfuly had in his possession and under his control, a quantity of narcotic drugs, to wit, One Bindle of Heroin, without having registered and without having paid such special tax, both as required by law."

2. A small quantity of narcotics denoted as a "retail" unit.

3. "Same: penalty; evidence
"Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000. For a second or subsequent offense (as determined under section 7237(c) of the Internal Revenue Code of 1954), the offender shall be imprisoned not less than ten or more than forty years and, in addition, may be fined not more than $20,000.

"Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury." 21 U.S.C.A. § 174 (1958).

"(c) Possession.—It shall be unlawful for any person who has not registered and paid the special tax provided for by this subpart or section 4702(a) to have in his possession or under his control narcotic drugs; and such possession or control shall be presumptive evidence of a violation of this subsection * * *." 26 U.S.C.A. § 4724(c) (1958).

was stopped by a motorcycle policeman and given a ticket for running a red light. Immediately thereafter he drove to a shopping center and went into a drug store. According to the druggist, Lane asked for something to "make him throw up." It is not clear exactly why he left without making a purchase. At any rate he left the drugstore and walked to White's Auto Store where he purchased a bottle of castor oil.

Meanwhile, Lane's companion had been driving the car around the parking lot. Lane returned to the car with the castor oil and the two drove off down route 80 to Fabeus, Texas. The customs agents observed all of these events. They stopped Lane near Fabeus. They had no search warrant or arrest warrant.

After halting the car, the customs agents took the occupants to a search room in the Customs House near the bridge. There, the two stripped and they as well as appellant's automobile were searched. The customs agents testified to observing needle marks on the bodies of Lane and his companion. However, no contraband was found. The customs agents next took the pair to the El Paso County hospital, where they were administered an emetic. Lane showed reluctance to take the emetic, but eventually took it by himself. The agents used no force. After drinking some water as part of the treatment, Lane and his friend both regurgitated a few times. The agents found nothing in the waste. The agents then allowed the two to go. Their car had been left near the bridge, so the agents put them in the back seat of a Government car and began to drive to Lane's car. On the way Lane vomited. The agent driving stopped the car. Lane promptly headed off to a filling station to get a damp rag. While he was gone, one of the agents discovered a small package in the vomit on the floor in the back seat. It proved to be a bindle of heroin.

At the trial appellant's attorney attempted to challenge three veniremen for cause. The Assistant U. S. Attorney trying the case was a friend of the three men and in the past had represented one of them in "minor matters." The trial court thoroughly interrogated the veniremen in question regarding any possible prejudice they might hold and decided that they would be competent jurors.

## I.

■■ Three questions are presented by this appeal. First, the appellant argues that the Government should have been forced to disclose the identity of the informer. Without this information, appellant argues, he was unable to ascertain whether the source was reliable enough to supply the "probable cause" necessary for the Government to take him into custody. This is not a new problem. The cases establish the guiding principle that the Government need not disclose the name of an informer, provided that the arresting officers came onto evidence sufficient to constitute probable cause, aside from *the informer's disclosures*. Bruner v. United States, 5 Cir., 1961, 293 F.2d 621. Roviaro v. United States, 1957, 353 U.S. 53, 60, 77 S.Ct. 623, 1 L.Ed.2d 639. This principle applies even though the agents acted solely on the basis of what they had learned. There must, however, be "corroborating evidence." Buford v. United States, 5 Cir., 1962, 308 F.2d 804. Cf. Draper v. United States, 1958, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327. The facts of this case bring it within the rule. The appellant's actions after originally entering his car, especially his attempt to purchase something to make him throw up and the actual purchase of the castor oil, gave the agents reasonable cause to believe that the narcotics *laws had been or were being violated*. Buford v. United States, supra; see Draper v. United States, supra. Hiding dope in the internal body cavities and recovering it by regurgitation or excretion is a common method of smuggling dope.

## II.

Next the appellant argues that the trial court erred in not granting his motion to suppress the introduction of the heroin on the ground that it was obtained by search and seizure in violation of the Fourth Amendment. Appellant also

contends that this procedure deprived him of due process of law as embodied in the Fifth Amendment.

Administering emetics to cause vomiting in order to recover narcotics is not an unreasonable search of the person. Barrera v. United States, 5 Cir., 1960, 276 F.2d 654; United States v. Michel, W.D.Texas 1957, 158 F.Supp. 34; see King v. United States, 5th Cir., 1958, 258 F.2d 754, affirming W.D.Texas 1957, 158 F.Supp. 34, cert. denied, 1959, 359 U.S. 939, 79 S.Ct. 652, 3 L.Ed.2d 639 (use of laxative to induce bowel movement); Denton v. United States, 9th Cir., 1962, 310 F.2d 129; Blackford v. United States, 9th Cir., 1957, 247 F.2d 745, cert. denied, 1958, 356 U.S. 914, 78 S.Ct. 672, 2 L.Ed.2d 586 (forcible removal of narcotics concealed in rectal cavity). Compare Taglavore v. United States, 9th Cir., 1961, 291 F.2d 262. As these cases demonstrate, a search is invalid only if it is unreasonable. E. g., Weeks v. United States, 1914, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652. Whether it is unreasonable depends on the circumstances of the particular case. Blackford v. United States, supra 247 F.2d at 751. The cases in which this type of search has been held to be unreasonable are characterized by the presence of force and a series of untoward acts on the person and property of the accused. Thus, the Supreme Court pointed out in Rochin v. California, 1952, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183: "[i]llegally breaking into the privacy of the petitioner, the struggle to open his mouth and remove what was there, the forcible extraction of his stomach's contents—this course of proceeding by agents of government to obtain evidence is bound to offend even hardened sensibilities. They are methods too close to the rack and the screw." 342 U.S. at 172, 72 S.Ct. at 209, 96 L.Ed. 183. Rochin was contending that the state court, in failing to suppress the evidence, had denied him due process under the Fourteenth Amendment, but the same principle is imposed upon the Federal courts by the Fourth Amendment. See Blackford v. United States, 247 F.2d supra at 750.

Here no force was used in the search. Lane was hesitant to take the emetic, but he did take it himself without any violence from the agents. Lack of force is not controlling (see Blackford v. United States, supra, and Denton v. United States, supra) but is a factor indicative of reasonableness. Another point going to the reasonableness of the search is the latitude allowed customs agents in the extent of their search when in quest of contraband they suspect is being imported. King v. United States, supra. And this latitude extends beyond the border. Ramirez v. United States, 5th Cir., 1959, 263 F.2d 385.

In many of the cases cited above the appellants have contended, as Lane does, that the actions of the police violated his right to due process of law under the Fifth Amendment. This question, while conceptually distinguishable from unreasonable search under the Fourth Amendment, is tied to the same operative facts. Since we have decided that the activities of the officers in this case were reasonable under the Fourth Amendment, they did not violate the due process clause. "The search and seizure not being unreasonable, it follows that there was not violation of the Due Process Clause of the Fifth Amendment." Blackford v. United States, 247 F.2d at 753.

### III.

Finally, the appellant contends that the three veniremen who were friends of the United States Attorney should have been dismissed for cause; he had to use preemptory challenges needed elsewhere to eliminate them. As we noted before, the trial court questioned and cautioned the three men about possible bias or prejudice. The following colloquy is typical of these inquiries:

"The Court: All right, do you think your acquaintanceship with him is close enough, Mr. Groom, that it might influence you even though you truthfully tried to keep it from doing so?

"Mr. Groom: Well, I don't think it would.

"The Court: Well, let me ask you this. As far as that phase of the case is concerned, is your mind in the same condition that it would be—that you would want a juror to be if you were being tried and a juror, with the acquaintanceship you have with Mr. Raney, was on the panel?

"Mr. Groom: I think it is."

This Court has had two recent occasions to deal with this problem. In Roberson v. United States, 5th Cir., 1957, 249 F.2d 737, cert. denied, 1958, 356 U.S. 919, 78 S.Ct. 704, 2 L.Ed.2d 715, a criminal case, the court decided that where a juror had been acquainted with the United States Attorney prosecuting in the trial and had a conversation limited to the jury's. going home at night, the denial of a new trial and the refusal to declare a mistrial were not abuses of the trial court's discretion. In these circumstances the court said that "a juror is not per se disqualified because he is acquainted with or a friend of counsel in the case, whether advocating the cause of a private litigant or prosecuting in a criminal trial. * * * No prejudice of the juror was shown at or before the jury was sworn or at any time thereafter." 249 F.2d at 740. In a civil case, Peerless Ins. Co. v. Schnauder, 5th Cir., 1961, 290 F.2d 607, cert. denied, 1961, 368 U.S. 830, 82 S.Ct. 52, 7 L.Ed.2d 33, the court reasserted its position in the following language:

"Three jurors were excused because of their acquaintance with counsel for the insurance company, and it is asserted that in so doing, the court erred. One was excused because he had known the attorney 'many, many years.' Another had known him 'for some time' 'just as a friend.' The third knew him 'personally' 'quite a number of years' having 'met him at different occasions,' and at 'social functions.' *We think the jurors were improperly excused.*" 290 F.2d at 610 (Emphasis added.)

See also 31 Am.Jur., Jury, § 205 (1958). We hold, therefore, that the jurymen's social associations with the United States Attorney did not disqualify them.

We have considered the other specification of error designated, but not argued, in the appeal and reject them.

Affirmed.