Robert Lafayette **POTTER**, Jr.,
Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 22793.

United States Court of Appeals
Fifth Circuit.
June 23, 1966.

S. Gunter Toney, Tallahassee, Fla., for appellant.

Clinton Ashmore, U. S. Atty., Jack Carrouth, Asst. U. S. Atty., Tallahassee, Fla., C. W. Eggart, Jr., Asst. U. S. Atty., Pensacola, Fla., for appellee.

Before WISDOM and COLEMAN, Circuit Judges, and HUGHES, District Judge.

COLEMAN, Circuit Judge:

Appellant was convicted of possession and removal of non-taxpaid distilled spirits in violation of 26 U.S.C., Sections 5205(a) (2), 5604(a) (1), and 5601(a) (12). The conviction stands on the discovery of a quantity of moonshine whiskey by Florida beverage agents as the result of a search, without a search warrant, of an automobile in which appellant was riding. There is no contention that the vehicle was not in appellant's possession and control. A motion to suppress the fruits of the search on the ground that the search was unreasonable was denied and the appellant was thereupon convicted. The appeal presents two questions: (1) Whether there was probable cause for the search and (2) whether it was reversible error to deny revelation of the identity of the informant or informants. For the reasons hereinafter developed, we reverse the conviction with directions that the indictment be dismissed.

I

 Whether there was probable cause for any particular search without a warrant is always a judicial question, to be determined after a full development of the relevant, material, competent facts, United States v. Robinson, 2 Cir., 1963, 325 F.2d 391. Each case must be decided on its own facts, Bruner v. United States, 5 Cir., 1961, 293 F.2d 621.

W. A. Dykes, Florida State Beverage Agent, testified that about 5 o'clock one morning he received information from "a confidential source" that appellant would transport a quantity of non-taxpaid whiskey into Chipley, Florida. The proof, on the motion to suppress, proceeded as follows:

"Q. Had you used that confidential informer prior to that time?

A. Yes, sir, I had.

Q. Was he reliable?

A. Yes, sir, he had previously been in the past.

Q. Did you recognize the party's voice on the telephone?

A. Not that I could positively say.

Q. Did the party give you his name?

A. I don't recall whether the party used the name or not.

Q. But did you know who he was?

A. I have got an idea who he probably was.

Q. But he didn't give you his name and you didn't recognize his voice, is that your testimony?

A. I didn't say I didn't know, I said I didn't know for sure. I can make a guess.

Q. Let's see what your recollection is—what does your recollection tell you now, did the party give you a name?

A. I don't remember his giving a name.

Q. So far as you were concerned this was a stranger giving you this information?

A. No, he said he wanted to keep it confidential because Robert might find out who it was.

Q. So far as you were concerned he was a stranger, you didn't know who this party was?

A. Well, he was talking on the phone and didn't give me a name, so I could not say for sure who it was.

Q. You didn't recognize the voice and you don't know whether or not this party's information was going to be reliable or not, did you?

A. Someone with a voice similar to this man, the man that called, they had given me information on occasions once or twice before this.

Q. But you are not certain that this was the same one?

A. No, no, I could not be positive it was the same man, no, sir, not just by voice."

The anonymous caller, according to the testimony of Agent Dykes, advised that the liquor car would be a 1957 Mercury, bearing tag number 51W536. The agent went to a point on Highway 77 South of U. S. 90 at Chipley and waited for appellant to come along. According to Mr. Dykes, when the car passed the observation point about 8:30 a. m. it was visibly violating no law. He stated that the only reason for his putting the car under surveillance was the telephone call.

While at the observation point, Officer Dykes said that a second confidential informer came up and advised that he had seen appellant loading empty jugs into the vehicle, which the second informer described. The officer did not say whether he knew this second informer. Nobody at any time vouched for the reliability of this second informer.

When counsel for the appellant asked for the names of the first and second informers, the government objected, and the objections were sustained.

The defense called Mr. Frank Brooks, another Florida Agent, who testified after refreshing his memory from notes. He said that he and Dykes went to the surveillance point before midnight. This was a material variance from the testimony of Dykes. Brooks saw the second informer, a colored man, talk to Dykes, but did not hear the conversation. He was asked to identify the informer, but the government's objection was sustained. He thereafter stated, however, that he did not know the informer, but the court then stated " * * * the objection is sustained", although the record fails to reflect that any objection had been made.

Vernon E. Anderson, another Florida Agent, testified that Dykes picked him up at 3 o'clock a. m. to go on the stake out.

This sums up the proof as to when, what, how, and from whom any information was received.

We now proceed to Officer Dykes' version of what happened when he started after the automobile in question, as follows:

"When the car came by and passed our position we waited until the car got approximately a hundred yards up the road and we pulled out on the highway behind it. The car approached the intersection of Vernon Highway and Hospital Road, I believe is the name of the street, at which time I pulled right up behind this car and was able to get the tag number off of the car, observed two colored males in the car. I didn't recognize the driver. The colored male that was sitting on the right side I could just see the top of his head. I pulled up closer to this car and as I pulled up alongside of the car the colored male sitting on the right raised up and I was able to recognize him as Robert Potter. He motioned with his hand and head to the driver and at the same instant the car accelerated to a high rate of speed at which time I turned on the red light and the siren and gave chase."

"Q. Did you notice anything unusual about the car prior to that time?

"A. As I pulled in behind the car and turned south, southeast on Hospital Drive, I observed the car seemed to be loaded. The springs when he hit a bump gave excessively.

"We chased the car over numerous streets on the south side of Chipley with speeds close to a hundred miles an hour and after about five or six blocks I finally managed to head the car into a curve and make him stop or either hit the state vehicle."

Agent Brooks gave the following testimony as to the loaded condition of the car:

"Q. Did the car appear to be heavily loaded or lightly loaded?

A. It appeared to be *slightly* loaded.

Q. More than average?

A. Yes, sir, more than average."

As to the basis for the chase, Mr. Dykes, who was not then in uniform and wore no badge, testified as follows:

"Q. Did you observe any crime being committed in your presence in this case?

A. Did I observe any crime?

Q. Yes, that your senses could detect?

A. When I pulled in behind the car *and he began to run* (emphasis ours) I figured something was wrong.

Q. You figured something was wrong?

A. Yes, sir. When he raised up out of his seat and motioned, or seemed to motion to the driver to accelerate, I ran alongside of the car and I had a good look at him.

Q. At the time the car passed you, the vicinity of your car, how fast was the car going?

A. Approximately forty, forty-five, maybe fifty miles an hour.

Q. Was it speeding?

A. No, sir.

Q. Did the car violate any traffic law?

A. Not until after I pulled up behind him, no.

Q. At the time he passed you he was was not violating any law that you knew of?

A. Not any traffic law, no, sir."

## II

The court, without making any specific finding of fact, denied the motion to suppress, in the following general language:

"Gentlemen I don't think there is any matter to belabor about this thing. The Court holds that the Motion to Suppress be denied. The evidence here is quite clear that there was not once but twice there were elements of confidential information and upon the information bearing fruit in the person and in the vehicle considered to be the suspect, that immediately the description of the automobile, its manner of

having been loaded and its acceleration to a high rate of speed in an attempt to avoid, to make chase you might say, clearly indicates that it was probable cause within the realm of the available law on the subject and there was no violation of any right to effect the arrest and effect a search. So, the Court holds the validity of the matter. So we will call in the jury."

A jury was then waived and the court found the defendant guilty on the proof already adduced, plus additional testimony as to the untaxpaid character of the whiskey.

### III

We emphasize at the outset that this was not a case in which the searching officer had a search warrant or an arrest warrant; neither was it a case in which the officer simply observed the subject committing an offense for which he arrested him and thereafter conducted a search incident to that arrest. The government makes no effort to sustain this search on the ground that the officer had authority to apprehend and arrest speeders and thereafter search their vehicles. Nor is it contended that this search was valid as effected pursuant to such authority. The conviction must stand or fall on probable cause, and the effort to overhaul the vehicle had already begun before the speeding occurred.

In determining this matter, as is frequently the case, we are confronted with the serious responsibility of deciding the issue in keeping with two laudable objectives: first, the maintenance of those protections guaranteed to every citizen by the fundamental law of the land and, second, the praiseworthy efforts of our law enforcement officers to apprehend the guilty. As was said in Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914):

"The effect of the 4th Amendment is to put the courts of the United States and Federal officials, in the exercise of their power and authority, under limitations and restraints as to the exercise of such power and authority, and to forever secure the people, their persons, houses, papers and effects, against all unreasonable searches and seizures under the guise of law. This protection reaches all alike, whether accused of crime or not, and the duty of giving to it force and effect is obligatory upon all intrusted under our Federal system with the enforcement of the laws. * * * The efforts of the courts and their officials to bring the guilty to punishment, praiseworthy as they are, are not to be aided by the sacrifice of those great principles established by years of endeavor and suffering which have resulted in their embodiment in the fundamental law of the land."

The principles announced in *Weeks* have, after long delay, been made applicable to officers and courts in every jurisdiction in the United States, state or federal, Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R. 2d 933, reh. den. 368 U.S. 871, 82 S.Ct. 23, 7 L.Ed.2d 72 (1961); Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). As to an invalid liquor search by state officers, the fruits of which were turned over to the United States, see Gambino v. United States, 275 U.S. 310, 48 S.Ct. 137, 72 L. Ed. 293 (1927).

Search without a warrant of an automobile does not violate the Fourth Amendment if made upon probable cause, that is, upon a belief reasonably arising out of circumstances known to the officer that the vehicle contains contraband, Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790 (1924).

In deciding the issue we must consider the totality of circumstances as the officer perceived them up to the moment he commenced the search. We cannot consider any evidence he may have discovered thereafter. A search is not to be made legal by what turns up after the search is begun. It is good or bad when it starts, regardless of ultimate

success. United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948);[1] Clay v. United States, 5 Cir., 1956, 239 F.2d 196.

Did Mr. Dykes have probable cause by virtue of information from a reliable source. We are of the opinion that he did not. The District Court made no findings of fact, other than his ultimate conclusion, and it is possible that he may have inferred from some of the testimony that Dykes really knew the identity of his first informant and thus knew his reliability; as to this he did not say. We cannot ignore the fact, however, that Dykes concluded his rather vague and evasive testimony, material parts of which were at serious variance with that of his fellow officers, by saying that he could not be positive about it, that he could give a guess. We do not believe that Constitutional rights involved in so critical a question are met by expressions of possibilities which are expressly hedged in doubt. And this is especially true when it is remembered that Dykes said the telephone call from this unknown source was the sole cause of his waiting by the highway to search appellant's vehicle. We repeat that no one vouched for the reliability of the second informer.

■ If reliable information is to be the *sole and uncorroborated* basis of probable cause, it finds no support in the communications of an unknown informer. It is self evident that none can know the reliability of an unknown source, and reliability is the controlling factor, Costello v. United States, 9 Cir., 1962, 298 F.2d 99, cert. den. 376 U.S. 930, 84 S.Ct. 699, 11 L.Ed.2d 650. See also, Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); and our decision in Espinoza v. United States, 278 F.2d 802 (1960).

■ We do not here have such a case on the facts as Scher v. United States, 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151 (1938) or Miller v. United States, 5 Cir., 1959, 273 F.2d 279, or Bruner v. United States, 5 Cir., 1961, 293 F.2d 621. The facts in those cases are recited in the opinions and speak for themselves without unduly protracting this opinion in further discussion of the distinctions. For clarity, however, we do point out that regardlesss of the reliability of the information if the officer goes to a certain place and before initiating the search then observes facts sufficient within themselves to constitute probable cause he may proceed. In such case, as stated in *Scher*, the legality of the search does not depend upon the credibility of something told but stands on what has been seen and heard—"what took place in their presence".

---

1. Terry v. State, 1965, 252 Miss. 479, 173 So.2d 889, is not a federal precedent. The facts, however, were identically similar to those here, including the anonymous phone call, chase, and search. The Fourth Amendment and Section 23 of the Mississippi Constitution are identical in purpose and substance. Mississippi has followed the *Weeks* exclusionary rule since 1922, Tucker v. State, 128 Miss. 211, 90 So. 845, 24 A.L.R. 1377. In *Tucker* the State Supreme Court said, "[w]e adopt as the better rule that laid down by the Supreme Court of the United States * * *. And in doing so we follow that court, which is our greatest exponent of constitutional law * * * ". Mississippi adopted the *Carroll* rule as to boats and vehicles in 1924, Moore v. State, 138 Miss. 116, 103 So. 483. Under the facts in *Terry*, above cited, the Mississippi Supreme Court, in an opinion by its present Chief Justice, held that probable cause is a judicial question for the decision of the court, defendant's counsel is entitled to know who gave the information and to obtain a full disclosure of the facts upon which the officer acted, information obtained from an anonymous telephone caller cannot constitute probable cause, that the arrest [search] begins when the pursuit begins, and if the officer does not have the authority to make an arrest at the instant he begins his pursuit for that purpose the fact that the pursued violates a traffic law in making his escape does not thereby authorize an arrest which began unlawfully. The conviction was reversed and appellant discharged.

■ In support of the instant search, the government has cited a number of cases, but none of them involved any question of the reliability of the informer. One of the cases actually considered only flight as a circumstance supporting substantive guilt. There was flight in two of the cited cases but the officers already had reliable information before the search was initiated. If the officer has probable cause when he initiates the search, he certainly has the right, if able, to pursue and overtake a fleeing vehicle. The whole point is that once he overtly begins the search he cannot justify his efforts solely by the reaction thereto.[2]

Under the facts of this case, we do not feel that the mere fact that appellant came along the highway, as predicted, saves the search. A citizen may be on the highway for any legitimate purpose. An enemy, name unknown and reliability unknown, may call the officer and falsely say that citizen has a load of liquor. The fact that citizen came along the highway as forecast is no proof of criminal activity if none is otherwise observed. It is not the traveling at a designated time and place that validates the search; it must be credible information of criminal activity or occurrences within the presence of the officers that would reasonably cause the belief that a crime is being committed.

■ This brings us to the last possible hope of saving this search. Dykes said that when he began to follow Potter he observed no violation of the law. After following him, however, he "observed the car seemed to be loaded. The springs when he hit a bump [and not otherwise] gave excessively". If this is worth anything, it was qualified by his later testimony, "when I pulled in behind the car and he began to run, I figured something was wrong". Agent Brooks corroborated loading only to the extend that "it appeared to be slightly loaded". Dykes testified that the liquor seized weighed, at the most, 145 pounds. There were only two other passengers in the car. Nothing is shown as to their size or weight. In any case, as a matter of common knowledge, this Court is not willing to establish the rule, in the absence of other proof, that an additional 145 pounds in a car carrying only two passengers can create such unusual distortions in weight as to reasonably confirm a belief that some unusual weight is being hauled—especially in view of Dykes' testimony that he observed sagging only when the car hit a bump and Agent Brooks was willing to go only so far as to call it a slight loading. This is not such a situation as Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) in which a search was upheld by a divided court when, in addition to other incriminating circumstances, the vehicle appeared to be "heavily loaded" and, in fact, did contain thirteen cases of liquor.

Probable cause not having been established for this search, we do not reach the question involving failure to reveal the name or names of the informer or informers, nor is it necessary for us to pass on the adequacy of opportunity to obtain a search warrant. We feel justified in commenting, however, as to the latter question that one officer testified that Dykes told him of the purported

---

**2.** We do not intend to suggest that a police officer must have sufficient information to constitute probable cause before he may follow and keep under surveillance a vehicle suspected of carrying contraband. Nor do we intend to exclude attempted flight or escape as a possible indication, along with other evidence, of criminal activity. See Monnette v. United States, 5 Cir., 1962, 299 F.2d 847; Kimes v. United States, 5 Cir., 1957, 242 F.2d 99, cert. denied, 354 U.S. 912, 77 S.Ct. 1299,

1 L.Ed.2d 1429 (1957). We merely hold that vague suspicion based on information of unproven reliability cannot be transformed into probable cause to justify a search or an arrest without a warrant because of an attempt by the suspect to escape or avoid custody. Wong Sun v. United States, 371 U.S. 471, 482–484, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Carter v. United States, 5 Cir., 1963, 314 F.2d 386, 388.

information before midnight, another said Dykes told him at 3 a. m., and Dykes said he received it about 5 a. m., with the search taking place at 8:30.

Reversed, with directions that the indictment be dismissed.