**La Verl BAILEY and Charles R. SMITH,**
Appellants,

v.

**UNITED STATES of America,**
Appellee.

No. 24158.

United States Court of Appeals
Fifth Circuit.

Dec. 1, 1967.

Royce R. Till, Houston, Tex., for appellants.

James R. Gough, Asst. U. S. Atty., Houston, Tex., Morton L. Susman, U. S. Atty., Ronald J. Blask and Thomas C. McClellan, Asst. U. S. Attys., for appellee.

Before HUTCHESON, WISDOM and GOLDBERG, Circuit Judges.

HUTCHESON, Circuit Judge:

We are again faced with determining the constitutional validity of a seizure of illegally imported narcotics. The District Court denied appellants' motion to suppress heroin and paraphernalia seized from them by United States Customs Officers. Rule 41(e), F.R.Crim.P. Their trial was to a jury, and appellants were convicted of violating the federal prohibitions against concealing and transporting illegally imported narcotics and purchasing narcotics not from the original stamped package. 21 U.S.C. Sec. 174; 26 U.S.C. Sec. 4704. In addition to contesting the legality of their search, appellants assign as error the trial court's refusal to charge the jury on the issue of criminal responsibility, a defense they claim was presented by evidence of their addiction to narcotics. Finding no error in either ruling, we affirm.

On September 27, 1965, Customs Agent Galanos, at Falcon Dam on the Texas-Mexican border, received a telephone call from an Agent in Houston. Galanos was informed that appellant Bailey and another man were leaving Houston in a white 1958 Pontiac with a specified license number, traveling to Roma, Texas, to obtain heroin. Galanos was advised that this information had been relayed by an officer of the Houston Police Department, but the original source was not revealed.

Galanos and three other officers set up surveillance of the highway through Roma. The vehicle they had been warned to expect was identified entering Roma at 9:30 P.M. It passed through town and continued west for a distance of 20–30 miles to a road known as the Chihuahua Ranch cut-off. At this point, the officers observed the car turn and proceed back toward Roma, make several U-turns and changes of speed, and turn south on Fronton Road, about three-fourths mile west of town. The vehicle was lost to the view of the surveilling officers until it returned to the highway ten minutes later. Agent Galanos testified that Fronton Road, which runs directly into the Rio Grande River, is known to be a crossing-point frequently used in the illegal trafficking of narcotics. Upon returning to the highway, the vehicle again headed west away from Roma, stopped briefly at a roadside park, and turned north on the Chihuahua ranch road where it stopped once more for about one-half hour. It then proceeded north, toward Houston. Throughout this period the officers had maintained surveillance, and at 2:30 A.M. they converged upon the vehicle as it was stopped again on the shoulder of the highway. Both appellants were standing beside the car, and Agent Galanos observed Bailey holding white papers of the type used to package heroin. Bailey dropped the papers as the officers approached. Also found in the area were three burnt matches, a pocket knife, a bottle of water, a burnt spoon, and a hypodermic needle, all equipment used to prepare and inject heroin. The papers and spoon were later found to have traces of heroin attached. The heroin and implements along with a bloody handkerchief and a needle cleaner found on the persons or in the automobile of appellants, were introduced as evidence in the District Court. The search took place at a point seventy miles north of the Falcon, Texas, border port after five hours of surveillance by the searching officers. There was no evidence that appellants entered Mexico.

As this was a warrantless search not incident to an arrest, the government either must have a finding that probable cause existed or must excuse its absence by resort to the border search doctrine.

No case has held that one who has not crossed an international boundary can be the object of a constitutionally permissible border search, and we do not reach that question. Rather, we assume the view of the searching officers, and hold that "the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient in themselves to warrant a man of reasonable caution in the belief" that appellants were, when searched, possessed of illegal narcotics. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925); Brinegar v. United States, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 93 L. Ed. 1879 (1949).

■ Information from an unknown source or a source unverified as to its consistent reliability is not of itself probable cause. Potter v. United States, 362 F.2d 493 (5th Cir. 1966). See Jones v. United States, 362 U.S. 257, 269, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). However the veracity of an unknown informer can be sufficiently determined by the searching officers' personal observation of some activity which is consistent with the tip but which would appear harmless without it. Lane v. United States, 321 F.2d 573 (5th Cir. 1963); Cali v. United States, 338 F.2d 974 (1st Cir. 1964); United States v. Sharpe, 322 F.2d 117 (6th Cir. 1963).

Appellants arrived in Roma in accordance with the information which had been received.[1] During the five hour surveillance, they drove about in a manner which, with their changes of direction, starts and stops, presented a suspicious appearance. This was enhanced by their entry of a known rendezvous point for persons crossing the border with illegal narcotics. We hold that the officers' personal observation of this circuitous travel, when combined with the anonymous information and the appearance of appellants as predicted, justified the officers in the belief that appellants carried contraband narcotics.

A second specification of error is the trial court's failure to honor appellants' request for a jury charge on the issue of criminal responsibility or "insanity". Two charges were requested in the alternative: the first employed the so-called *Durham* test for responsibility,[2] the second embodied the A.L.I. Model Penal Code test.[3] This Court has refused to adopt either approach to "insanity", choosing to adhere to the familiar M'Naghten standards. Carter v. United States, 325 F.2d 697 (5th Cir. 1963) (affirmance by equally divided court, en banc); Howard v. United States, 232 F. 2d 274 (5th Cir. 1956). We do not think this case a proper vehicle for reexamination of that important question, for the reason that the issue of criminal responsibility was not raised by the evidence.

■ The only evidence on the issue of responsibility was each appellant's testimony that he was addicted to narcotics, had been unable to cure his addiction, and could not resist the daily use of heroin. Appellants' theory is that addiction is a defect or disease which creates a compulsion to procure and use narcotics, and that one acting under such a compulsion should not be criminally responsible. Appellants refer to Robinson v. State of California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), urging that punish-

1. As we held in Potter v. United States, 362 F.2d 493, 499 (5th Cir. 1966), the mere appearance of an automobile as predicted by an informant is not adequate corroboration.

2. Durham v. United States, 94 U.S.App. D.C. 228, 214 F.2d 862, 45 A.L.R.2d 1430 (1954). Under *Durham*, no act is criminal which "was the product of mental disease or mental defect." 214 F.2d at 875.

3. By this test, one is not responsible who "as a result of mental disease or defect lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law." This standard was recently accepted by the Second Circuit. United States v. Freeman, 357 F.2d 606 (2d Cir. 1966); United States v. Malafronte, 357 F.2d 629 (2d Cir. 1966).

ment imposed upon addicts for narcotics crimes is cruel and unusual in contravention of the Eighth Amendment to the Constitution.

*Robinson* is not authority for appellants' position. That case involved a conviction under a California statute which made it a criminal offense to "be addicted to the use of narcotics." The Court vacated the conviction, holding that punishment could not constitutionally be imposed for occupying the status of drug addiction. The holding was limited to the criminality of addiction, and the Court said there is no constitutional objection to punishment for the "unauthorized manufacture, prescription, sale, purchase, or possession of narcotics."[4]

No court has accepted what appellants here urge. In Freeman v. United States, 357 F.2d 606 (2d Cir. 1966), a case heavily relied upon by appellants, the court took care to state that

> mere recidivism or narcotics addiction will not of themselves justify acquittal under the American Law Institute standards which we adopt today * * In light of the severe penalties imposed by Congress for the possession and sale of narcotics, it would be unwise at this stage of medical knowledge for a court to conclude that those addicted to narcotics should be, for that reason alone, immune from criminal sanctions. 357 F.2d at 625.

Likewise, the District of Columbia Court of Appeals has held that "a mere showing of narcotics addiction, without more, does not constitute 'some evidence' of mental disease or insanity so as to raise the issue of criminal responsibility." Heard v. United States, 121 U.S.App.D.C. 37, 348 F.2d 43, 44 (1965). See also Hutcherson v. United States, 120 U.S. App.D.C. 274, 345 F.2d 964 (1965); Castle v. United States, 120 U.S.App.D.C. 398, 347 F.2d 492 (1964); Lloyd v. United States, 119 U.S.App.D.C. 373, 343 F.2d 242 (1964); People v. Borrero, 35 U.S.L. Week 2627 (N.Y.App.1967).

In addition to the dearth of authority, two observations support our holding. First, the record contains no evidence probative of the contention that addiction eliminates the criminal intent of a narcotics offender. It would appear that an element of reasoned choice yet exists when an addict knowingly violates the law in acquiring and using drugs.[5] One is not excused for offending simply because he wanted to very, very badly.[6] We also note that Congress has taken a remedial step, having recently provided for civil commitment in lieu of prosecution and for criminal sentencing for treatment of narcotics addicts. Narcotic Addict Rehabilitation Act of 1966, 80 Stat. 1438 (28 U.S.C. Secs. 2901–2906; 18 U.S.C. Secs. 4251–4255). We would not undertake extension of *Robinson* beyond a line expressly drawn by the Supreme Court, especially when Congress has carefully contrived a procedure for dealing with this grievous social problem. The District Court did not err in its refusal to charge as requested.

As a final challenge to the regularity of their conviction, appellants complain of improper jury argument by government counsel.[7] It is not at all clear to us

---

4. Presumably the same would be true despite proof of a causal relation between the status of addiction and the commission of these proscribed acts. The *Robinson* case has been employed as authority for holding that chronic alcoholism was a defense to the crime of "public drunkenness." Easter v. District of Columbia, 124 U.S.App.D.C. 33, 361 F.2d 50 (1966); Driver v. Hinnant, 356 F.2d 761 (4th Cir. 1966).

5. But see Bowman, Narcotic Addiction and Criminal Responsibility Under *Durham*, 53 Georgetown [Geo.] L.Rev. 1017, 1029–1048 (1965).

6. See Queen v. Dudley & Stevens, 14 Q.B. 273 (1884), where it was held that overwhelming hunger did not justify homicide and cannibalism, even as an alternative to certain starvation.

7. "And the actions of the defendants in the Roma area and all, I think that they were just not coming forward with all of the truth and I think in that regard we can reasonably assume that the defendants haven't told the truth. I think there is something more to it than this. I think, at most these people addicted will sell heroin and I think it's, of course, too, a tragic thing."

that appellants were injured, particularly in light of the court's remedial instructions and the virtually unchallenged fact of appellants' guilt.

The judgment is affirmed.