Charles E. BUSH, Appellant,

v.

UNITED STATES of America, Appellee.

No. 23638.

United States Court of Appeals
Fifth Circuit.

Feb. 1, 1968.

**486**

Ray Sandstrom, Fort Lauderdale, Fla., for appellant.

Lloyd G. Bates, Jr., Asst. U. S. Atty., Miami, Fla., for appellee.

Before TUTTLE and SIMPSON, Circuit Judges.*

SIMPSON, Circuit Judge:

This is an action brought under 22 U.S.C.A. § 401,[1] wherein the libelant (United States) seeks forfeiture of a Piper Aztec aircraft. The libel alleges that on December 28, 1963, the aircraft was illegally exported and removed from the United States for the purpose of

---

\* Honorable GEORGE T. WASHINGTON, Senior Circuit Judge of the D.C. Circuit, sat by designation in this case. Due to subsequent illness, he has not participated in the decision.

**1.** 22 U.S.C.A. § 401:

(a) Whenever an attempt is made to export or ship from or take out of the United States any arms or munitions of war or other articles in violation of law, or whenever it is known or there shall be probable cause to believe that any arms or munitions of war or other articles are intended to be or are being or have been exported or removed from the United States in violation of law, the Secretary of the Treasury, or any person duly authorized for the purpose by the President, may seize and detain such arms or munitions of war or other articles and may seize and detain any vessel, vehicle, or aircraft containing the same or which has been or is being used in exporting or attempting to export such arms or muni-

tions of war or other articles. All arms or munitions of war and other articles, vessels, vehicles, and aircraft seized pursuant to this subsection shall be forfeited.

Applicability of laws relating to seizure, forfeiture, and condemnation.

(b) All provisions of law relating to seizure, summary and judicial forfeiture and condemnation for violation of the customs laws, the disposition of the property forfeited or condemned or the proceeds from the sale thereof; the remission or mitigation of such forfeitures; and the compromise of claims and the award of compensation to informers in respect of such forfeitures shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under the provisions of this section, insofar as applicable and not inconsistent with the provisions hereof. Awards of compensation to informers under this section may be paid only out of funds specifically appropriated therefor.

conducting a bombing raid on the Island of Cuba. Appellant Charles E. Bush, owner of an interest in the Piper Aztec by virtue of a lease-purchase agreement, has intervened to assert a claim to the aircraft. In the answer to the libel, claimant Bush denies that the Piper Aztec was exported in violation of the law, and further prays that it be restored to him. During the proceedings below the aircraft was returned to Bush pursuant to his posting bond of $15,000.00. Subsequently, the aircraft was sold, and the United States is now seeking forfeiture of the bond.

It should be noted that 22 U.S.C.A. § 401(b) provides that the provisions of the customs laws[2] are to be followed with respect to judicial forfeitures such as the instant case. Specifically, the provisions of 19 U.S.C.A. § 1615[3] spell out the burden of proof procedures once probable cause has been established.

We are faced with three distinct issues on this appeal: (1) whether the Aztec aircraft in question is a commodity within the meaning of the Export Control Act (50 App., U.S.C.A. §§ 2021–2032); (2) whether the Government adequately met the burden of establishing probable cause, for seizure of the aircraft, thus shifting the burden to the claimant pursuant to 19 U.S.C.A. § 1615; and (3)

whether the aircraft was in fact exported in violation of the law. Our answer is "yes" to all three questions, leading us to affirm.

## I.

The first contention of the appellant is foreclosed by the regulations promulgated under the Export Control Act. In 15 C.F.R. 370.1(f) commodity is defined as "any article, material, or supply except technical data." The aircraft in question clearly falls within this definition of commodity; the first contention of appellant is without merit.

The appellant has conceded in his brief that the licensing arrangements under which he operated his various aircraft "are so worded as to provide that an export permit is necessary if the aircraft is intended to be removed to Cuba rather than the Bahama Islands."[4]

It is clear that the provisions of Section 371.25(b) make the exportation unlawful if the evidence is sufficient to support a finding that the intended destination of the aircraft was Cuba. The sufficiency of the evidence on this point will be discussed in parts II and III of the opinion.

## II.

A brief resumé of the facts is necessary for a thorough understanding of

---

2. 19 U.S.C.A. § 1581 et seq.

3. "In all suits or actions brought for the forfeiture of any vessel, vehicle, merchandise, or baggage seized under the provisions of any law relating to the collection of duties on imports or tonnage, where the property is claimed by any person, the burden of proof shall lie upon such claimant; and in all suits or actions brought for the recovery of the value of any vessel, vehicle, merchandise, or baggage, because of violation of any such law, the burden of proof shall be upon the defendant: *Provided,* That probable cause shall be first shown for the institution of such suit or action, to be judged of by the court, * * *"

4. The provisions of 15 C.F.R. 371.25 make necessary this concession on the part of appellants. Section 371.25(b), as it read at the time of institution of the instant forfeiture action, provides:

(b) *United States registered aircraft.* An operating civil aircraft of United States registry may depart from the United States under its own power for a temporary sojourn abroad under the conditions set forth in subparagraphs (1) and (2) of this paragraph.

(1) A United States operating civil aircraft may depart from the United States under its own power for any destination except Poland (including Danzig), a destination in Subgroup A, *or Cuba,* provided that:

(i) The aircraft does not carry from the United States any commodity for which export authorization has not been granted by the appropriate United States Government agency;

(ii) *The aircraft is not to be used in any military activity while abroad.* (Emphasis added).

the balance of this opinion. On the afternoon of December 28, 1963, the Piper Aztec in question took off from Broward International Airport, Broward County, Florida, and landed shortly thereafter at the airport in Bimini. On this flight the aircraft was piloted by William Shearer, an American pilot hired by Bush, and had no passengers aboard. About the same time the Piper Aztec left Broward International, a boat named the Ebb Tide left Miami. Towards evening the Ebb Tide rendezvoused with a smaller boat a short distance off the Miami coast. The Ebb Tide took the smaller boat in tow and proceeded in an easterly direction. Customs agents were keeping the Ebb Tide under surveillance. Once the Ebb Tide had taken the smaller boat in tow, the Customs agents pursued, overtook and boarded the two boats. Aboard the smaller boat were four individuals, bombs, various naval and aerial maps, and propaganda leaflets which set out information relative to bombing raids on the island of Cuba during the summer of 1963. Both boats were seized by the Customs agents. Two of the individuals aboard the smaller boat were Evelio Alpizar and Daniel Orlando Denis.

An accurate summary of the Customs agents' testimony is that prior to December 28, 1963, United States Customs agents had been investigating various air strikes which had been made against the island of Cuba. The investigation focused, in large part, upon MIRR, a Cuban revolutionary group headed by Dr. Orlando Bosch. Customs agents had information that Dr. Bosch's group had carried out several bombing raids on Cuba with rented civilian aircraft which had left the United States unarmed and piloted by American pilots and then flown to an airstrip in Bimini. According to the information available to the Customs agents, the planes had been supplied with armaments and personnel by boats which had left Florida and arrived at Bimini after the airport in Bimini had closed for the night and was without supervisory personnel. The

bombing raids were then staged during the time the airport was closed.

The Customs agents also had information that a further raid might be conducted sometime during December, 1963. In their investigation directed towards preventing any such further raids, Customs agents paid close attention to certain persons they knew to have been associated with MIRR. This group included Daniel Orlando Denis, Evelio Alpizar, and William Johnson. On or about December 15, 1963, William Johnson was seen aboard the Ebb Tide. This fact led the Customs agents to pay close attention to, and follow the movements of the Ebb Tide.

Customs agents also attempted to determine what planes in the area might be used for any further bombing raids. One of the planes towards which the Customs agents directed their attention was the plane which is the subject matter of this litigation. Earlier in 1963, another plane owned by Mr. Bush had been seized in connection with certain alleged neutrality violations. The plane seized earlier had been piloted by Evelio Alpizar, although Mr. Bush had claimed at that time that the use of the plane had been unauthorized. During December of 1963, Customs agents knew that Alpizar had been taking flight instructions from Bush. On the basis of the information they possessed, the Customs agents, during the month of December 1963, paid close attention to the Piper Aztec owned by Mr. Bush. Flight authorities were requested to notify the Customs agents of any flight plans filed for the aircraft. Further, Customs agents started flying over the landing strip at Bimini to observe the planes parked there. In flying over the Bimini airport, they were specifically watching for a landing of Bush's Piper Aztec. On December 28, 1963 the Customs agents learned of the arrival of said aircraft at the Bimini airport. On the night of December 28, 1963, the Piper Aztec was left parked on the Bimini airstrip. On December 29, 1963, Mr.

Shearer flew the plane back to Broward International Airport without any passengers aboard. On December 30, 1963, the aircraft was seized by Customs agents at the Broward field.

■ The appellant argues that the government's evidence was insufficient to establish probable cause for the institution of the forfeiture proceedings. It is well settled that once probable cause has been found to support the initial seizure, the burden shifts to the claimant to show that the seized article was not actually exported in violation of the law. This Court laid down this principle in Rubin v. United States, 5 Cir. 1961, 289 F.2d 195, 200, wherein it was stated:

"The Customs laws for more than a century had placed the burden of proof upon the claimant, provided that probable cause of seizure be first shown by the libelant. By the 71st section of the Duty-Collection Act of 1799, Chap. 128, the *onus probandi* to establish the innocence of the property is thrown upon the claimant in all cases where probable cause is shown for the seizure and prosecution."

The only argument presented by the appellant is that it is improper to establish probable cause by the use of evidence that is properly classified as double and triple hearsay. No cases were cited by appellant, and the trial court allowed such evidence for the limited purpose of establishing probable cause, and not to be considered as to whether the unlawful exportation actually took place. The evidence objected to consists of various statements by the government agents as to what they had been told, what they had heard, and what they had read in government reports, all tending to show

that plans were afoot to export the aircraft in question for the purpose of conducting a bombing raid on Cuba.

■ It is well settled that the probable cause necessary in forfeiture proceedings is less than prima facie legal proof and no more than reasonable ground for belief in guilt. United States v. One 1963 Cadillac Hardtop, 231 F.Supp. 27 (D.C.Wis.1964). Probable cause in forfeiture proceedings is something more than mere suspicion and must be generally regarded as reasonable under all the circumstances. United States v. One 1955 Ford Sedan, 164 F.Supp. 729 (D.C.Md.1958). The argument of the appellant that hearsay testimony is inadmissible for the purpose of establishing probable cause was decided adversely to his contention in Ted's Motors v. United States, 8 Cir. 1954, 217 F.2d 777, 780:

"We have no doubt that information of guilt, *even though hearsay and incompetent with respect to the merits* of a case such as the instant one, may constitute probable cause or, in other words, a reasonable ground for a belief in guilt, justifying the institution of the action. Any other rule would seem to be illogical, unrealistic and opposed to everyday human experience." (Emphasis added)

■ Probable cause was established in the instant case for the institution of the forfeiture proceeding.[5]

### III.

■ We reach now the question of whether the evidence was sufficient to prove that the aircraft had in fact been exported in violation of law. The central

---

5. See further the statement by Judge Hutcheson as the organ for this court in Bailey v. United States, 5 Cir., 1967, 386 F.2d 1 at page 3 [December 1, 1967] of the printed slip opinion: "Information from an unknown source or a source unverified as to its consistent reliability is not of itself probable cause. Potter v. United States, 362 F.2d 493 (5th Cir. 1966). See Jones v. United States, 362 U.S. 257, 269, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) ; Draper v. United States, 358 U.

S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). However the veracity of an unknown informer can be sufficiently determined by the searching officers' personal observation of some activity which is consistent with the tip but which would appear harmless without it. Lane v. United States, 321 F.2d 573 (5th Cir. 1963); Cali v. United States, 338 F.2d 974 (1st Cir. 1964) ; United States v. Sharpe, 322 F.2d 117 (6th Cir. 1963)."

issue is whether the aircraft was intended "to be used in any military activity while abroad". 15 C.F.R. 371.25.

■ As to this issue, there is only the testimony of appellant and that of William Johnson. Johnson's testimony is directly in conflict with appellant's testimony that the flight to Bimini was an ordinary commercial flight, made to pick up a passenger in Bimini and then return to the United States. Johnson testified that the appellant's aircraft was to wait at the Bimini airport where it would pick up the bombs and other equipment from the boats, and then depart to Cuba.

The trial court credited the testimony of Johnson and discredited that of appellant. We are not prepared to disturb that finding. Accordingly, the judgment appealed from is

Affirmed.