**UNITED STATES of America**

v.

**James PIERCE, Joseph N. Sims, Clifton Barnes and William Pullet.**

**Crim. No. 31497.**

United States District Court
E. D. Louisiana,
New Orleans Division.

July 2, 1969.

Horace P. Rowley, Asst. U. S. Atty., for the United States.

James F. Mulla, Jr., New Orleans, La., for defendant James Pierce.

John C. Ciolino, New Orleans, La., for defendant Joseph N. Sims.

RUBIN, District Judge:

## RULING ON MOTION TO SUPPRESS

Defendants James Pierce and Joseph Nathaniel Sims are charged with the theft of thirteen bottles of whiskey from an interstate shipment, a violation of 18 U.S.C. § 659.

Pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure the defendants have moved to suppress evidence (the bottles of whiskey) seized as the result of a search of a 1962 Oldsmobile automobile occupied by the defendants near the Governor Nicholls Street Wharf in New Orleans, Louisiana, on December 4, 1968. The search was conducted by members of the New Orleans Harbor Police Force without a search warrant and was not conducted incident to the execution of an arrest warrant. The defendants were arrested following the warrantless search and the evidence was seized incidental to their arrest.

The defendants claim that the evidence is the fruit of an unconstitutional search because the pre-arrest, warrantless search was conducted without probable cause.[1] The government claims that there was probable cause to search the vehicle, and, alternatively, that the search was conducted pursuant to an ordinance adopted by the Board of Commissioners of the Port of New Orleans (the Dock Board) authorizing the Harbor Police to examine the contents of packages in automobiles operated within 50 feet of a wharf or its approaches.[2]

The government argues that the statutory authority of the Harbor Police to search vehicles near the wharves is similar to the statutory authority of customs agents (19 U.S.C. § 482) to conduct border searches of vehicles without regard

---

1. *Compare* Beck v. State of Ohio, 1964, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142; Henry v. United States, 1959, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134, involving arrests without probable cause that preceded searches incidental to the arrests.

2. Section 3 of the ordinance, adopted in 1947 pursuant to LSA–R.S. 34:25, provides:

    "Section 3. That it shall be unlawful for the owner or operator of any cart, dray, wagon, automobile, truck, motorcycle, or other vehicle or conveyance, to operate same in, on, or about, or within fifty (50) feet of, any bulkhead, dock, pier, wharf, landing, shed, warehouse, or other structure or facility, including the approaches thereto and the appurtenances thereof, under the jurisdiction, administration, or control of this Board, unless such owner or operator shall, upon request, submit the contents of said vehicle to the examination and scrutiny of any member of this Board's Harbor Police."

    Section 5 of the Ordinance prescribes a maximum criminal penalty of a $100.00 fine and one year imprisonment in Parish Prison for non-compliance with Section 3 or other sections of the Ordinance.

to the customary Fourth Amendment requirement of probable cause.[3] It contends that under Section 3 of the Ordinance the defendants waived their Fourth Amendment right to object to the search as a condition precedent to the privilege of operating the vehicle near the Wharf. This was an intelligent waiver, the government argues, because signs notifying persons on or near the wharves of the ordinance were conspicuously posted at all entrances and exits to the wharves.[4]

Relying on Camara v. Municipal Court of City and County of San Francisco, 1967, 387 U.S. 523, 87 S.Ct. 1727, 18 L. Ed.2d 930, the defendants contend that, if the Ordinance authorizes searches based on mere suspicion, it violates the Fourth Amendment. The defendants also urge that the Ordinance violates Article II, Section 1, and Article III, Section 1 of the Louisiana Constitution because it represents an improper delegation of legislative power to the Dock Board by the state legislature. The legislature alone, the defendants contend, has the power to create and define offenses against the state.[5]

An evidentiary hearing was conducted to determine whether the search was conducted pursuant to the Dock Board Ordinance on mere suspicion, or on probable cause. Having concluded from the testimony adduced at the hearing that there was probable cause for the search, it is unnecessary to consider the constitutionality of the Ordinance. For the reasons assigned below, the motion to suppress is denied.

## MERE SUSPICION v. PROBABLE CAUSE

On December 4, 1968 a shipment of whiskey that had been stored at the Governor Nicholls Street Wharf (the Wharf) was being transferred from the Wharf onto adjacent boxcars by a work gang. At approximately 1:30 p.m. Officer Clarence Smith, a member of the New Orleans Harbor Police Force, was in an unmarked car in plain clothes making a routine check of the wharves when he noticed defendant Pierce working in the gang. Smith knew Pierce and knew that he had previously been convicted of theft of cargo from the wharves. He also observed a 1962, brown Oldsmobile automobile, which he recognized as belonging to Pierce, parked nearby on the city-side apron of the Wharf. There are two aprons at each wharf, one on the city-side of the wharf and one on the river-side. The city-side apron is employed by trucks coming onto the wharf to discharge cargo. Railroad tracks are located immediately adjacent to the city-side apron to facilitate direct loading of goods from the wharves onto boxcars. Officer Smith knew that whiskey was being loaded. He, like other harbor policemen, considered whiskey "hot cargo," particularly attractive to waterfront thieves. Smith reported his observations to his superior, Captain Roy Allemand, and was instructed by Captain Allemand to keep Pierce under surveillance.

At approximately 2:30 p.m. Smith returned to the Wharf, in uniform, with his partner, Patrolman Archie Ben.

3. For a discussion of the border search exception, see Note, 77 Yale L.J. 1007 (1968).
   *Compare* United States v. McGlone, 4 Cir. 1968, 394 F.2d 75 and Morales v. United States, 5 Cir. 1967, 378 F.2d 187, holding searches of vehicles in situations similar to the present case reasonable when conducted by customs officers.

4. The signs read:
   "Notice
   All packages, parcels, boxes, bundles, vehicles are subject to be searched when entering or leaving properties of the Board of Commissioners of the Port of New Orleans."

5. The defendants rely on State v. Maitrejean, 1939, 193 La. 824, 192 So. 361 and the cases cited therein. For the proposition that LSA–R.S. 34:25 does not improperly delegate the power to the Dock Board to enact criminal ordinances, the government relies on Keegan v. Board of Commissioners, 1923, 154 La. 639, 98 So. 50.

Smith ordered Ben to proceed down the railroad tracks to watch the brown Oldsmobile and to report back if he saw anyone place contraband in the vehicle. Around 4:30 p.m. Smith noticed Pierce's automobile leaving the area where it had been parked, moving in a downstream direction. The vehicle disappeared behind the three boxcars loaded with whiskey. Although this was the normal route for a vehicle to take to leave the Wharf, Pierce's automobile remained behind the boxcars three to four minutes. When Pierce's automobile reappeared Smith watched it proceed down the exit ramp. Recognizing Pierce as the driver, Smith stopped the car about 12 feet from the Wharf as it was crossing the railroad tracks leaving the Wharf, identified himself as a harbor policeman, and, pursuant to the Dock Board Ordinance, said he wanted to inspect the vehicle. Defendant Sims was a passenger in the automobile and remained seated as Pierce got out of the car and opened the trunk. After finding the trunk empty, Smith entered the vehicle and found two large paper bags containing the whiskey on the rear-seat floor covered with a piece of canvas. Smith did not have a search warrant authorizing the search of the 1962 Oldsmobile; nor did he have an arrest warrant for either defendant.

■■ Only searches that are unreasonable under all of the circumstances are prohibited by the Fourth Amendment. Terry v. State of Ohio, 1968, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; Elkins v. United States, 1960, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669. "[A] reasonable warrantless search of a moving vehicle may be properly made in the absence of a prior arrest," the Fifth Circuit Court of Appeals said in Williams v. United States, 5 Cir.1968, 404 F.2d 493, 494, "so long as there is probable cause for the search." Where probable cause exists for believing that a vehicle is transporting contraband or illegal merchandise a pre-arrest, warrantless search by an experienced officer is reasonable and constitutionally permissible. Carroll v. United States, 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; Brinegar v. United States, 1949, 338 U. S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879.

■ Probable cause to search a moving vehicle exists when "there are facts and circumstances sufficient to warrant a reasonably prudent man to believe that the vehicle contains contraband." Williams v. United States, supra, 404 F.2d at 494. See also, Stacey v. Emery, 1878, 97 U.S. 642, 24 L.Ed. 1035; Husty v. United States, 1931, 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629; Brinegar v. United States, supra. Whether probable cause is present is determined by objective standards, giving due consideration to the searching officer's experience. Baily v. United States, 5 Cir.1967, 386 F.2d 1. Cf. Terry v. State of Ohio, 1968, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889.

■ Smith, an experienced officer, knew that whiskey was being transferred from the wharf onto boxcars; he knew that whiskey cargoes are an almost irresistable temptation to waterfront thieves; he knew that Pierce was a member of the work gang and that Pierce had a prior record of convictions for theft of goods from the wharves. Smith recognized the 1962 Oldsmobile as belonging to Pierce and recognized it when it disappeared behind the boxcars. Although the boxcars obstructed both Ben's and Smith's view and neither saw either defendant unload anything from a boxcar and hide it in the automobile, the unusual delay of the private vehicle behind the boxcars, together with the other facts and circumstances, gave them reasonable grounds to believe that the defendants had stopped the vehicle, taken whiskey from the boxcar, and concealed it in the vehicle. There was no parking area behind the boxcars. Smith knew that the Governor Nicholls Street Wharf apron was very wide, posing no problem for the Pierce auto to get by. He knew that private vehicles were not loaded on the wharves. He also knew that bottles of whiskey could be easily removed from the boxcars and hidden in an automobile. Although the route used

by Pierce was the normal one for vehicles to employ to leave the Wharf, there was no apparent legitimate reason for the Pierce vehicle to stop behind the boxcars and linger there for three to four minutes when it should have reappeared in thirty to forty seconds. The suspicion was reasonable—indeed it was true.

Accordingly, the motion to suppress is denied.